**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARK MIKHLIN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> OASMIA PHARMACEUTICAL AB, JULIAN ALEKSOV, MIKAEL ASP, ANDERS LUNDIN, FREDRIK GYNNERSTEDT, and ANDERS BLOM, <br><br> Defendants. | No.  1:19-cv-04349-NGG-RER <br><br> <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF**
**UNOPPOSED MOTION FOR ENTRY OF ORDER PRELIMINARILY APPROVING**
**SETTLEMENT AND ESTABLISHING NOTICE PROCEDURES**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .......................................................................................... 1

II.    SUMMARY OF THE LITIGATION AND THE SETTLEMENT ................................ 2

    A. Procedural History .................................................................................. 2

    B. Damages ................................................................................................ 3

    C. Settlement Negotiations ......................................................................... 4

III.    KEY TERMS OF THE PROPOSED SETTLEMENT ............................................ 4

    A. Relief to Settlement Class Members and Release of Claims ........................ 4

    B. Conditional Class Certification ............................................................... 5

    C. Termination of the Settlement ................................................................ 5

IV.    PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS
    APPROPRIATE ............................................................................................ 6

    A. Standards for Preliminary Approval ........................................................ 6

    B. The Settlement Meets the Procedural Factors ........................................... 7

        (i)    Plaintiffs' Counsel Obtained Sufficient Information About the Merits of the
                Case and Negotiated the Settlement At Arm's Length ...................................... 7

        (ii)    Plaintiffs and Plaintiffs' Counsel Adequately Represented the Class .............. 9

    C. The Settlement Meets the Substantive Factors .......................................... 10

        (i)    The Complexity, Expense, and Likely Duration of the Litigation Supports
                Approval .................................................................................................. 11

        (ii)    The Risks of Further Litigation Support Approval .......................................... 12

        (iii)    The Ability of Defendants To Pay a Larger Judgment Supports Approval .. 14

        (iv)    The Settlement Amount Supports Approval .................................................... 14

    D. The Attorneys' Fees Are Reasonable ....................................................... 15

    E. The Parties Have No Other Agreements Besides Opt-Outs ........................... 16

    F. THE PROPOSED PLAN OF ALLOCATION TREATS CLASS MEMBERS
        FAIRLY .................................................................................................. 16

V.    THE PROPOSED NOTICE TO CLASS MEMBERS SATISFIES RULE 23(C)(2)(B)
    .............................................................................................................. 17

VI.    THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT
    PURPOSES ................................................................................................ 18

    A. Numerosity ............................................................................................ 19

    B. Commonality .......................................................................................... 19

C. Typicality...................................................................................................................... 20

D. Common Questions Predominate and the Class Is Superior to Other Methods of
  Adjudication............................................................................................................... 21

VII. PROPOSED SCHEDULE OF EVENTS ......................................................................... 22

VIII. CONCLUSION ................................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) .................................................. 18, 21

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) .......................................................................................... 9

*Bensley v. FalconStor Software, Inc.*,
  277 F.R.D. 231 (E.D.N.Y. 2011) ......................................................................................... 8

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) .............................................................................................. 19

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79, 101 S. Ct. 993, 67 L. Ed. 2d 59 (1981) .................................................... 6

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ................................................................................................ 11

*Clark v. Ecolab Inc.*,
  No. 04CIV.4488PAC, 2010 WL 1948198 (S.D.N.Y. May 11, 2010) ........................................ 7

*Consol. Edison, Inc. v. Ne. Utilities*,
  332 F. Supp. 2d 639 (S.D.N.Y. 2004) .................................................................................. 17

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) .................................................................................................. 19

*EB v. New York City Dep't of Educ.*,
  No. 02CV5118ENVMDG, 2015 WL 13707092 (E.D.N.Y. July 24, 2015) .............................. 6

*Fogarazzo v. Lehman Bros.*,
  263 F.R.D. 90 (S.D.N.Y. 2009) ........................................................................................... 19

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  903 F.2d 176 (2d Cir. 1990) ................................................................................................ 20

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968) ................................................................................................ 19

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258, 134 S. Ct. 2398, 189 L. Ed. 2d 339 (2014) ...................................................... 14

iii

*In re AOL Time Warner, Inc. Sec. & "Erisa" Litig.*,
  No. 02 CV. 5575 (SWK), 2008 WL 2941219 (S.D.N.Y. July 30, 2008)................................. 16

*In re Bayer AG Sec. Litig.*,
  No. 03 CIV. 1546 (WHP), 2008 WL 5336691 (S.D.N.Y. Dec. 15, 2008).............................. 16

*In re Boeing Sec. Litig*., 97-1715 (W.D. Wash.)............................................................................. 8

*In re BP p.l.c. Sec. Litig.*,
  852 F. Supp. 2d 767 (S.D. Tex. 2012)................................................................................... 13

*In re Citigroup, Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013) .................................................................................. 17

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG),
  2010 WL 2653354 (E.D.N.Y. June 24, 2010) ....................................................................... 12

*In re Dynex Capital, Inc. Sec. Litig.*,
  No. 05 CIV. 1897 HB, 2011 WL 781215 (S.D.N.Y. Mar. 7, 2011) ........................................ 20

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007).......................... 9, 19, 20

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  343 F. Supp. 3d 394 (S.D.N.Y. 2018) .................................................................................. 11

*In re Genworth Fin. Sec. Litig.*,
  210 F. Supp. 3d 837 (E.D. Va. 2016) ................................................................................... 15

*In re GSE Bonds Antitrust Litig.*,
  No. 19-CV-1704 (JSR), 2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019)...................................... 7

*In re HealthSouth Corp. Sec. Litig.*,
  261 F.R.D. 616 (N.D. Ala. 2009) ........................................................................................ 20

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
  233 F.R.D. 306 (E.D.N.Y. 2006) ........................................................................................ 12

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010)..................................................................................... 17, 18

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ............................................................................ 13, 14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  991 F. Supp. 2d 437 (E.D.N.Y. 2014) .................................................................................. 15

*In re Priceline.com Inc. Sec. Litig.*,
  236 F.R.D. 89 (D. Conn. 2006) .......................................................................................... 21

iv

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................................. 13

*Kamakana v. City & Cty. of Honolulu*,
   447 F.3d 1172 (9th Cir. 2006)............................................................................ 16

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997).................................................................................. 9

*Moukengeshcaie v. Eltman, Eltman & Cooper, P.C.*,
   No. 14CV7539MKBCLP, 2019 WL 5204809 (E.D.N.Y. Oct. 15, 2019) ................................. 7

*Palacio v. E\*TRADE Fin. Corp.*,
   No. 10 CIV. 4030 LAP DCF, 2012 WL 2384419 (S.D.N.Y. June 22, 2012)........................... 7

*Pelzer v. Vassalle*,
   655 F. App'x 352 (6th Cir. 2016) ....................................................................... 15

*Simerlein v. Toyota Motor Corp.*, No. 3:17-CV-1091 (VAB),
   2019 WL 1435055 (D. Conn. Jan. 14, 2019) .......................................................... 7

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
   323 F.3d 32 (1st Cir. 2003) .......................................................................... 21, 22

*Teachers' Ret. Sys. of Louisiana v. ACLN Ltd.*,
   No. 01 CIV. 11814 (LAP), 2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) ............................. 20

*Thompson v. Metro. Life Ins. Co.*,
   216 F.R.D. 55 (S.D.N.Y. 2003)........................................................................ 11

*Thorpe v. Walter Inv. Mgmt. Corp.*,
   No. 1:14-cv-20880-UU, 2016 U.S. Dist. LEXIS 144133, at \*25, 28, 31 (S.D. Fla. Oct. 17,
   2016).................................................................................................. 8

*Vargas v. Capital One Fin. Advisors*,
   559 F. App'x 22 (2d Cir. 2014) ...................................................................... 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005).......................................................................... 6, 17

## Statutes

15 U.S.C. § 78u-4(a)(7) ................................................................................. 17

## Rules

Fed. R. Civ. P. 23 ...............................................................................passim

**Other Authorities**

7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788 at 528 (1986) ... 21

*The End of Objector Blackmail?*,
   62 Vand. L. Rev. 1623 (2009) ............................................................................................. 15

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs Jeffrey Oster, Rosalind Schoof, and Mark Mikhlin (collectively, "Plaintiffs" or "Lead Plaintiffs") respectfully submit this memorandum in support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement.

## I.    INTRODUCTION

Plaintiffs and defendant Oasmia Pharmaceutical AB[1] ("Oasmia" or the "Company"), have agreed to settle this case for $2.35 million ("Settlement").[2] The Court need not, at this time, determine whether to finally approve the Settlement. Rather, by this motion, Plaintiffs ask the Court to take the first step in the approval process by entering an order: (i) granting preliminary approval of the proposed Settlement; (ii) certifying, for settlement purposes only, the proposed Settlement Class; (iii) approving the Settling Parties' proposed form and method of giving notice to the proposed Settlement Class; and (iv) setting a date for a Settlement Hearing and deadlines for mailing and publication of the Notice, the filing of Settlement Class Member objections, the filing of Settlement Class Member opt-out notices, the filing of Plaintiffs' motion for Final Approval of the Settlement, and the filing of Plaintiffs' Counsel's application for attorneys' fees and expenses.

The proposed Settlement is a model of how responsible, experienced attorneys can use the securities laws to compensate aggrieved investors for their losses quickly while limiting the drain on judicial resources. Counsel on both sides recognized that for a variety of reasons, this case was suitable for early resolution. They examined and discuss the case's strengths and weaknesses. They

---

[1] Julian Aleksov, Mikael Asp, Anders Lundin, Fredrik Gynnerstedt, Anders Blom, Bo Cederstrand, Alexander Kotsinas, Lars Bergkvist, Per Lango, Hans Liljeblad, Horst Domdey, and Ernst & Young AB are also beneficiaries of the Settlement.

[2] Because the Settlement Class has not been notified of the Settlement, the Court does not have the benefit of their reaction. It will at final approval.

1

negotiated in good faith and at arm's length, and reached the Settlement. As a result, the court will not need to decide any motions for summary judgment, discovery motions, or even motions to dismiss, while the Parties will be spared the costs of litigating this case. Yet the Settlement, reached less than a year after the initial complaint was filed, will permit Settlement Class Members to recover more than half of their compensable losses (before fees and costs).

The Court should also enter ancillary relief necessary for preliminary approval. The Court should preliminarily certify a Settlement Class, because all the requirements are met and Defendants do not oppose certification for settlement purposes. The Court should approve the plan to provide notice to the Class and the specific documents which will do so, because they meet all applicable requirements. And the Court should set a date for the fairness hearing where, armed with class members' reactions to the settlement, it will determine whether to finally approve the Settlement.

## II.    SUMMARY OF THE LITIGATION AND THE SETTLEMENT

### A.    Procedural History

This case ("Action") was filed on July 29, 2019. Jeffrey Oster, Rosalind Schoof, and Mark Mikhlin timely moved for appointment, and were appointed, as Lead Plaintiffs. Dkt. No. 13. The Court also appointed their chosen counsel, Hagens Berman Sobol Shapiro LLP and The Rosen Law Firm, P.A., as Co-Lead Counsel. (Dkt. No. 13).

Then, in November 2019, Lead Plaintiffs timely filed their Amended Class Action Complaint For Violations Of The Federal Securities Laws (Dkt. No. 23) (the "Amended Complaint"). In January 2020, the Parties requested and the Court agreed to stay this action so the Parties could explore settlement.

2

**B.      Damages**

The amount of damages is important in every case. Here, though, the parties' damages estimates differed vastly.

To calculate damages in a securities class action, plaintiffs must estimate both the per-share damages and the number of damaged shares. Plaintiffs base per-share damages on the price decrease of the security, after adjusting for broader market movements, on the day or days following the corrective disclosures identified in the Complaint. To estimate the number of damaged shares, experts use a trading model to estimate the number of individual shares that were purchased at artificially inflated prices during the Class Period. Estimated class-wide damages are simply per-share damages times the number of damaged shares.

A critical input into the trading model which estimates damaged shares is the total number of shares available for trading.  The securities at issue in this case are Oasmia's ADSs, which are U.S.-traded securities which represent common shares traded on foreign exchanges. Oasmia issued approximately 2.3 million ADSs and 1.3 million options to buy ADSs in its IPO. But the ADSs could, by contract, be exchanged for the common shares they represented. According to Bloomberg, a public source for share count data, more than two-thirds of the ADSs issued in Oasmia's IPO had been exchanged for common shares by the time of the first corrective disclosure. If those public numbers are accurate, then damages are about $4.5 million. If no ADSs were exchanged for common shares, then damages are more than $13 million.

Plaintiffs' expert contacted both Bloomberg and, ultimately, the depositary to determine whether the publicly-reported numbers were accurate. Plaintiffs' investigation proved inconclusive. Thus, the total number of ADSs was a critical dispute in settlement discussions.

3

C.      **Settlement Negotiations**

On March 6, 2020, the Settling Parties held a mediation session before Jed Melnick of JAMS. Before the mediation session, the Settling Parties exchanged detailed mediation statements analyzing the merits of the case, liability, and damages. The mediation was successful and a settlement in principle was reached.

The Settlement Stipulation memorializes the agreement between the parties to fully and finally settle the Action and to fully release all Released Claims against Oasmia and the Released Parties with prejudice in return for specified consideration.

The Settlement Stipulation also required Oasmia to provide sufficient evidence to prove that publicly-reported ADS counts are accurate. It has now down so. Accordingly, maximum provable damages are approximately $4.5 million.

III.    **KEY TERMS OF THE PROPOSED SETTLEMENT**

A.      **Relief to Settlement Class Members and Release of Claims**

Oasmia has agreed to pay $2.35 million in return for a release of the Released Claims against Defendants and their Released Parties.

The Released Claims are:

**[]** any and all Claims (including Unknown Claims as defined in ¶ 1.41), demands, rights, liabilities, and causes of action of every nature and description whatsoever (including, but not limited to, any claims for damages, restitution, rescission, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, or liability whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether known or unknown, contingent or absolute, mature or immature, discoverable or undiscoverable, whether concealed or hidden, suspected or unsuspected, which now exist, or heretofore have existed, asserted or that could have been asserted by or on behalf of any of the Releasing Parties, in any capacity, arising out of or relating to the purchase of the Company's ADSs during the Settlement Class Period and the acts, facts, statements, or omissions that were or could have been alleged by Plaintiffs in the Action. Notwithstanding the foregoing, "Released Claims" does not include claims to

4

enforce the terms of this Stipulation or orders or judgments issued by the Court in connection with this Settlement.

The Released Parties are:

[] "Released Parties" means (i) Oasmia and its past or present subsidiaries, parents, affiliates, successors, predecessors, shareholders, creditors, officers, directors, employees, insurers, reinsurers, professional advisors, attorneys, contractors, agents, and any firm, trust, corporation or other entity in which it has a controlling interest; (ii) Aleksov, Asp, Lundin, Gynnerstedt, Blom, Cederstrand, Kotsinas, Bergkvist, Lango, Liljeblad, Domdey, and EY, their legal representatives, heirs, successors in interest or assigns, or any person, firm, trust, corporation or other entity in which a Defendant has a controlling interest; and (iii) Plaintiffs and Settlement Class Members and each of their respective parent entities, associates, affiliates, subsidiaries, predecessors, successors, assigns, attorneys, immediate family members, heirs, representatives, administrators, executors, devisees, legatees, and estates.

## B.   Conditional Class Certification

For settlement purposes only, Defendants have consented to certification of the following

Class ("Settlement Class"):

[A]ll persons other than Defendants who purchased Oasmia publicly-traded ADSs listed on United States stock exchanges during the Settlement Class Period, and were allegedly damaged thereby. Excluded from the Class are Defendants and their immediate families, the officers and directors of the Company at all relevant times, their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest. Also excluded from the Settlement Class are those persons who file valid and timely requests for exclusion in accordance with the Court's Order of Preliminary Approval of Settlement ("Preliminary Approval Order")

## C.   Termination of the Settlement

Defendants may withdraw from the Settlement if Settlement Class Members owning a certain amount of Oasmia securities elect to opt out of the Settlement Class. The threshold amount is set forth in a separate agreement that will not be filed with the Court unless Defendants choose to exercise their right to withdraw.

5

If the Settlement is not approved by the Court, or does not become final due to any appeals or Defendants' withdrawal from the Settlement, the Parties will return to their respective positions prior to the Settlement and the litigation will proceed apace.

## IV.   PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

### A.   Standards for Preliminary Approval

The law favors settlement, particularly in class actions and other complex cases. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). So "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *EB v. New York City Dep't of Educ.*, No. 02CV5118ENVMDG, 2015 WL 13707092, at *1 (E.D.N.Y. July 24, 2015). Further, in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14, 101 S. Ct. 993, 67 L. Ed. 2d 59 (1981).

Federal Rule of Civil Procedure 23(e) requires that courts approve class action settlements. Fed. R. Civ. P. 23(e). After 2018 revisions ("Revision"), Federal Rule of Civil Procedure 23(e) now requires that the Court consider whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." In turn, Rule 23(e)(2) provides:

(2) *Approval of the Proposal.* If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;

> (B) the proposal was negotiated at arm's length;

> (C) the relief provided for the class is adequate, taking into account:

>> (i) the costs, risks, and delay of trial and appeal;

6

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including

timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Courts within the Second Circuit disagree about whether the Revision changed the standard for preliminary approval. Some courts continue to find, following pre-Revision precedent, that "[p]reliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is what might be termed probable cause to submit the proposal to class members and hold a full-scale hearing as to its fairness." *Simerlein v. Toyota Motor Corp.*, No. 3:17-CV-1091 (VAB), 2019 WL 1435055, at *10 (D. Conn. Jan. 14, 2019); *Moukengeshcaie v. Eltman, Eltman & Cooper, P.C.*, No. 14CV7539MKBCLP, 2019 WL 5204809, at *7 (E.D.N.Y. Oct. 15, 2019) (same). A minority of courts, however, read the Revision's requirement that the court "will likely be able to" approve the settlement to impose a "more exacting standard[.]" *In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2019 WL 6842332, at *1 (S.D.N.Y. Dec. 16, 2019). The Settlement satisfies either standard.

## B. The Settlement Meets the Procedural Factors

### (i) Plaintiffs' Counsel Obtained Sufficient Information About the Merits of the Case and Negotiated the Settlement At Arm's Length

"In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Clark v. Ecolab Inc.*, No. 04CIV.4488PAC, 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010) (citation omitted). Courts

7

also give weight to the parties' judgment that the settlement is fair and reasonable. *Palacio v. E\*TRADE Fin. Corp.*, No. 10 CIV. 4030 LAP DCF, 2012 WL 2384419, at \*2 (S.D.N.Y. June 22, 2012). Likewise, "a mediator's involvement in settlement negations can help demonstrate their fairness." *GSE Bonds*, 2019 WL 6842332, at \*2. These points are still true even if the Court applies the more exacting standards favored by a minority of courts in this Circuit. *Id.* ("[A] class settlement [] reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation [] enjoy[s] a presumption of fairness.").

Plaintiffs' Counsel The Rosen Law Firm, P.A. and Hagens Berman Sobol Shapiro LLP are "experienced, capable [and] knowledgeable in complex class litigation." *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 242 (E.D.N.Y. 2011) ("the Rosen Law Firm is well-qualified to serve as lead counsel in this matter."); *Thorpe v. Walter Inv. Mgmt. Corp.*, No. 1:14-cv-20880-UU, 2016 U.S. Dist. LEXIS 144133, at \*25, 28, 31 (S.D. Fla. Oct. 17, 2016) (The Rosen Law Firm has "developed a reputation for zealous advocacy in securities class actions," "prosecuted this case zealously and skillfully," "devoted significant time and resources to researching, investigating, and prosecuting of this action," and achieved an "outstanding result"). Hagens Berman has secured numerous large awards and settlements for investors in securities class actions, including in its role as lead counsel in *Shapiro v. JPMorgan Chase & Co. et al.*, 11-8331 (S.D.N.Y., Mar. 24, 2014), an action that recovered $218 million for the investor class in a combined settlement with the DOJ and SEC of over $2.2 billion. *See id.* at ECF 67 (Amended Memorandum Opinion and Order Granting Plaintiffs' Motions for Final Class Action Settlement Approval And Attorneys' Fees); *In re Tremont Securities Law, State Law and Insurance Litigation*, 08-11117, ECF 603 (S.D.N.Y., Aug. 19, 2011) (granting final approval of a $100 million plus settlement between investors, defendant, and its affiliates; *In re Boeing Sec. Litig.*, 97-1715 (W.D. Wash.) (a settlement of more

8

than \$92.5 million, which at the time was the second-largest securities fraud settlement in the Northwest). . Indeed, the two firms have collectively secured securities class action settlements worth more than \$1 billion. See Declaration of Jonathan Horne ("Horne Dec."), Exs. 1 and 2. Plaintiffs' Counsel have the experience to pursue this case through trial, if necessary, but they also have the experience to know the Settlement is a much better option for the Settlement Class than that trial would be.

Counsel need not enter formal discovery to obtain information necessary to evaluate the fairness of a settlement. Rather, an "informal exchange of information" can give Plaintiffs "sufficient discovery to weigh the strengths and weaknesses of their claims and to accurately estimate the damages at issue." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 475 (S.D.N.Y. 2013) (approving pre-discovery settlement).\Here, Plaintiffs investigated and filed a detailed complaint while the parties exchanged mediation briefs setting forth and discussing the merits of the case and then attended an all-day mediation. Plaintiffs also obtained confirmatory discovery from Defendants to confirm that they correctly understood the facts.

Moreover, in securities actions, no discovery can take place until the court denies the defendants' motion to dismiss. Thus, if courts required discovery, counsel could never settle securities class actions before a decision on the motion to dismiss.

### (ii)    Plaintiffs and Plaintiffs' Counsel Adequately Represented the Class

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. Plaintiffs must first show that the interests of the representative parties will not conflict with the interests of the class members, and second, that counsel chosen by the representative parties is qualified, experienced and able to conduct the proposed litigation vigorously. *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at \*13 (S.D.N.Y. July 27, 2007). The requirement of adequacy "is motivated by

9

concerns similar to those driving the commonality and typicality requirements, namely, the efficiency and fairness of class certification." *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997).

The proposed Settlement Class representatives purchased Oasmia securities during the Class Period and have no interests antagonistic to those of the members of the proposed Settlement Class. The proposed representatives seek to recover from Defendants, on their own behalf and on behalf of all members of the Settlement Class, damages allegedly caused by Defendants' unlawful conduct. The representatives' interests are therefore congruent with and not antagonistic to other Settlement Class Members' interests.

Plaintiffs' Counsel is adequate. Plaintiffs conducted an extensive investigation before filing their Amended Complaint. They reviewed publicly available English- and Swedish-language information about Oasmia. They consulted with an accounting and auditing expert. They also spent more than ten thousand dollars and well over a dozen hours attempting to determine damages in this case. Plaintiffs had the benefit of Defendants' mediation statement, which set forth Defendants' arguments and defenses on Plaintiffs' theories of liability, damages, and loss causation.

Finally, Plaintiffs' Counsel adequately represented the Settlement Class in reaching the Settlement, which recovers approximately 52% of class-wide damages.

### C.    The Settlement Meets the Substantive Factors

At the Settlement Hearing, in determining whether a settlement is fair, reasonable, and adequate, the Court will decide whether to approve the settlement under the factors articulated in *Grinnell*: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the

class to the settlement;[3] (3) the stage of the proceedings and the amount of discovery completed;[4] (4) risks, including the risks of establishing liability and damages and maintaining the class action through trial; (5) the ability of the defendants to withstand a greater judgment; and (6) the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).[5]

All six factors need not be satisfied; rather, the Court should consider the totality of these factors in light of the particular circumstances. *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003).

The Settlement satisfies all these factors.

### (i)    The Complexity, Expense, and Likely Duration of the Litigation Supports Approval

"[S]ecurities class actions are [] 'notably difficult and notoriously uncertain to litigate.'" *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 409 (S.D.N.Y. 2018). In the typical securities class action, Parties must review hundreds of thousands of pages of documents. Plaintiffs must prove elusive facts like the state of mind of corporate executives when they engaged in complex transactions. Further, plaintiffs must prove entitlement to class treatment, loss causation, and damages, through expert testimony. Plaintiffs must typically retain other experts – here, Plaintiffs would retain an accounting expert.

Plaintiffs would face all these risks and complexities in litigating this case to trial. But the case is more difficult than most, principally for two reasons. First, Oasmia operates in Sweden and

---

Because the Settlement Class has not been notified of the Settlement, the Court does not have the benefit of their reaction. It will at final approval.

[4] Addressed at §§ II.A.; IV.E.(i)., above.

[5] Plaintiffs combine similar factors to streamline presentation.

largely in Swedish. Plaintiffs would have to hire Swedish-speaking attorneys to review Defendants' voluminous production. They would have to translate a host of Swedish-language documents into English, at great expense. Depositions would take place half a world away in Sweden, and would likely require translators, creating more costs and difficulty.

Second, Plaintiffs allege that the relevant truth was disclosed in a complex series of disclosures. Plaintiffs' expert must show that each of those corrective disclosures revealed new market-moving news. As to each of the corrective disclosures, Plaintiffs' expert must determine whether any confounding news released the same day had an impact on stock price. Plaintiffs must attribute a per-share "price" to each of these confounding pieces of news.

Similarly, the length of further proceedings is daunting. This case is at its very beginning. Absent the Settlement, before they could recover, Plaintiffs would have to defeat a motion to dismiss, certify a class, conduct fact discovery, conduct expert discovery, survive summary judgment, win at trial, and survive the inevitable appeals. This process would likely take more than five years.

### (ii)     The Risks of Further Litigation Support Approval

Courts recognize that settlements benefit class members by providing them with an immediate and certain recovery. *See In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 316 (E.D.N.Y. 2006) ("The immediacy and certainty of a recovery is a factor for the court to balance in determining whether the proposed settlement is fair, reasonable, and adequate"). Chasing a better result through continued litigation always carries the risk that the plaintiff ends up with less or no money than is on offer.

One of these risks is that the Court might grant Defendants' motion to dismiss. The PSLRA imposes stringent pleading requirements which have made "securities actions [] more difficult from a plaintiff's perspective." *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG),

2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010). Among other things, the PSLRA mandates that the Complaint supports an inference of scienter that is at least as compelling as any non-culpable inference Defendants propose. This is not an easy task. *In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("The Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading."). The Court might grant Defendants' motion to dismiss and the Second Circuit might uphold the dismissal. Then, the Settlement Class would get nothing.

Or the Court might grant summary judgment. One of the elements Plaintiffs must prove, scienter, is notoriously difficult to establish. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579 (S.D.N.Y. 2008). If the Court grants Defendants' motion for summary judgment, then Plaintiffs would have spent years, thousands of attorney hours, hundreds of thousands of dollars in costs, and many judicial resources, and still get nothing.

Likewise, the jury might find against Plaintiffs at trial, recovering nothing for Plaintiffs and the Settlement Class after expending significantly more time, expense, judicial resources, ***and*** the jury's time.

Or a favorable jury verdict might be reversed on appeal. In that case, in addition to all the costs of taking a case through trial, Plaintiffs would have also spent the Second Circuit's time and again get nothing.

Further, proving damages in a securities case is always difficult and invariably requires intricate expert testimony. Defendants would oppose any expert Plaintiffs retained with an equally well-credentialed expert expressing the opposite view. Courts recognize that the unpredictability of battles of the experts supports settlement approval. *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 338-39 (E.D.N.Y. 2010) ("In such a 'battle of the experts,' the jury could well have

13

been swayed by defendants' experts, finding that the plaintiffs were entitled to little or no recovery even if liability were established.").

Even if the Complaint survived Defendants' motion to dismiss, Plaintiffs would have to move for class certification. This motion would cost attorney time as well as costly expert discovery to show that Oasmia's ADSs traded on an efficient market, entitling investors to a presumption of reliance on Defendants' alleged false statements and omissions. Defendants could have then attempted to rebut that presumption by showing a lack of price impact. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 281, 134 S. Ct. 2398, 189 L. Ed. 2d 339 (2014). While courts typically certify proposed classes of investors in equity securities, Oasmia is a small, thinly-traded company, which creates a real risk that the Court would deny certification.

Further, the evidence Plaintiffs would use to prove that Oasmia's stock traded on an efficient market is expert testimony, subjecting the Class to all the risks inherent to any such battle of the experts. *See MetLife*, 689 F. Supp. 2d 297, 338-39. The risks of maintaining a class action through trial weigh in favor of approving the Settlement.

### (iii)    The Ability of Defendants To Pay a Larger Judgment Supports Approval

Oasmia is a development-stage biotechnology company. Its financial situation was so dire at the close of the Class Period that it was forced to sell shares in a rights offering to existing shareholders to meet expenses and pay down debt. Since then, it has continued to lose millions of dollars every quarter. There is no guarantee that Oasmia would still exist by the time Plaintiffs could obtain a judgment against it.

### (iv)    The Settlement Amount Supports Approval

According to Cornerstone, a financial expert, in 2018, the median settlement in cases with less than $25 million in damages recovered 12.8% of total damages. Laarni T. Bulan & Laura E.

14

Simmons, *Securities Class Action Settlements—2019 Review and Analysis*, at 8 (Cornerstone Research 2020). [6] Having confirmed that publicly-reported ADS counts are accurate, Plaintiffs estimate that total damages in this case are $4.5 million. The Settlement recovers 52% of total damages, or about four times as much as the median settlement.

### D.    The Attorneys' Fees Are Reasonable

Rule 23(e)(2)(C)(iii) requires that the Court consider "the terms of any proposed award of attorney's fees, including timing of payment." The proposed Notice states that Plaintiffs' Counsel will seek an award of attorneys' fees of no more than one third of the Settlement Amount plus interest and expenses in an amount not to exceed $150,000. Courts in this Circuit regularly award fees of one third of the settlement. *E.g. In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437 (E.D.N.Y. 2014) (awarding fees on a graduated schedule including 33.3% to the first $10 million of the settlement, and noting it is "very common" to see 33% contingency fees in settlements less than $10 million).

In addition, Plaintiffs' Counsel requests that any award of fees and expenses be paid at the time the Court makes its award. Such so-called quick-pay provisions are permissible. *See In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 846 (E.D. Va. 2016) (ordering that "attorneys' fees and Litigation Expenses awarded above may be paid to Lead Counsel immediately upon entry of this Order"). Indeed, they are "common." *Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016) *citing* Brian T. Fitzpatrick, Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623, 1625–26 (2009).

---

[6]    Available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2019-Review-and-Analysis

### E.    The Parties Have No Other Agreements Besides Opt-Outs

Rule 23(e)(2)(C)(iv) requires that any agreement made in connection with the proposed Settlement be disclosed. As set forth in the Stipulation (¶7.4), the Settling Parties have entered into a supplemental agreement. This supplemental agreement provides that if Settlement Class Members holding more than a certain amount of damaged shares opt out, Defendants have the option to terminate the Settlement. It is only the supplemental agreement's specific terms (chiefly the number of shares that will trigger the right to terminate) that is kept confidential, which courts have permitted. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

### F.    THE PROPOSED PLAN OF ALLOCATION TREATS CLASS MEMBERS FAIRLY

"To warrant approval, the plan of allocation must also meet the standards by which the ... settlement was scrutinized—namely, it must be fair and adequate." *In re Bayer AG Sec. Litig.*, No. 03 CIV. 1546 (WHP), 2008 WL 5336691, at \*3 (S.D.N.Y. Dec. 15, 2008). "[A]n allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." *In re AOL Time Warner, Inc. Sec. & "Erisa" Litig.*, No. 02 CV. 5575 (SWK), 2008 WL 2941219, at \*4 (S.D.N.Y. July 30, 2008).

The proposed Plan of Allocation, which is set forth in ¶8 of the Notice and was developed by Plaintiffs' damages expert in consultation with Plaintiffs' Counsel, provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms. Each Settlement Class Member will be assigned a Recognized Claim calculated based on the dates they purchased and sold Oasmia ADSs, the price they paid, and the number of shares they held through each of the corrective disclosures alleged in the Complaint. Class Members will then receive a *pro rata share* of the Net Settlement Fund based entirely on the

16

relative sizes of their Recognized Claims. Neither Plaintiffs nor any other Settlement Class Members receives any preferential treatment. Courts in this Circuit regularly approve plans that allocate proceeds using such a formula. . *See In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

## V.      THE PROPOSED NOTICE TO CLASS MEMBERS SATISFIES RULE 23(C)(2)(B)

Likewise, the Notice to the class meets the requirements of Rules 23(c)(2) and 23(e). Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014) (finding delivery of notice by first class mail to be reasonable). The notice plan suffices if (a) it sufficiently ensures that the notice will be disseminated to potential Settlement Class Members, and (b) the notice documents "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id.* at 27. Notice is adequate "if the average person understands the terms of the proposed settlement and the options provided to class members thereunder." *Wal-Mart*, 396 F.3d at 114.

The PSLRA and the Due Process Clause of the United States Constitution impose similar requirements. *See* 15 U.S.C. § 78u-4(a)(7); *Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("Due process requires that the notice to class members fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.") (internal citations omitted).

Plaintiffs propose to provide notice to the Class through two documents: a mailed notice, attached as Exhibit A to the Settlement Stipulation ("Notice"), and a notice for publication ("Summary Notice"). The Notice will be mailed to all Settlement Class Members who can be identified either through Oasmia's depository agent or as customers of nominees who hold shares

17

for their clients in street name. The Summary Notice will be issued on the *GlobeNewswire* and in print in the *Investor's Business Daily* shortly after the initial mailing of the Notice. Courts regularly approve exactly such notice plans. *See, e.g.*, *In re Marsh ERISA Litigation*, 265 F.R.D. at 145.

The proposed Notice provides detailed information concerning: (a) the rights of Settlement Class Members, including the manner in which objections could be lodged and requests for exclusions to be submitted; (b) the nature, history, and progress of the Action; (c) the proposed Settlement; (d) the process for filing a Proof of Claim; (e) the proposed Plan of Allocation; (f) the fees and expenses to be sought by Plaintiffs' Counsel; and (g) the necessary information for any Settlement Class Member to examine the Court records should they desire to do so.

Thus, the notice plan satisfies all applicable requirements.

## VI. THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

To preliminarily approve the Settlement, the Court must also preliminarily certify the Settlement Class. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23).

Rule 23 governs the certification of class actions. One or more members of a class may sue as representative parties on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a).[7] In addition, an action may be maintained as a class action if the "questions of law or fact common to class members predominate over any questions affecting only individual

---

[7] Adequacy is addressed at § V.D., above.

members, and [] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### A.  Numerosity

Rule 23(a)(1) requires a class be so large that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticable" does not mean "impossible," as "joinder may merely be difficult or inconvenient, rendering use of a class action the most efficient method to resolve plaintiffs' claims." *Fogarazzo v. Lehman Bros.*, 263 F.R.D. 90, 96 (S.D.N.Y. 2009).

Courts presume numerosity in cases involving nationally traded securities. *EVCI,* 2007 WL 2230177 at *12. Indeed, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). In this case, although the exact size of the Settlement Class is not yet known, there are likely hundreds, if not thousands, of members in the proposed class. Thus, the numerosity requirement is met.

### B.  Commonality

The commonality element of Rule 23(a)(2) requires that "questions of law or fact [are] common to the class." *EVCI,* 2007 WL 2230177 at *13. In a securities class action like this one the commonality requirement "is applied permissively." *Id.* Commonality is "not defeated by slight differences in class members' positions," *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975), or because "all of the allegations of the class do not fit together like pieces in a jigsaw puzzle." *Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir. 1968). The Rule 23(a)(2) standard is qualitative rather than quantitative; that is, there need be only a single issue common to all members of the class. This requirement is easily met in most cases. *See Newberg on Class Actions* (4th ed. 2002) § 3.10.

The principal issues in this case relate to Defendants' conduct. They include whether a false statement of material fact or material omission was made, whether the statements/omissions

19

were made with the requisite state of mind, and what is the proper measure of damages. Thus, there is commonality. *See*, *e.g.*, *Teachers' Ret. Sys. of Louisiana v. ACLN Ltd.*, No. 01 CIV. 11814 (LAP), 2004 WL 2997957, at *4 (S.D.N.Y. Dec. 27, 2004) (commonality is satisfied when it is alleged that class members have been injured by the same fraudulent scheme).

### C.    Typicality

Under Rule 23(a)(3), a representative's claim is typical if each class member's claim arose from the same course of conduct and is based on the same legal theories. "Typical," however, does not mean identical. *EVCI*, 2007 WL 2230177, at *13. As with commonality, the typicality requirement is not demanding. *In re Dynex Capital, Inc. Sec. Litig.*, No. 05 CIV. 1897 HB, 2011 WL 781215, at *2 (S.D.N.Y. Mar. 7, 2011); *see also In re HealthSouth Corp. Sec. Litig.*, 261 F.R.D. 616, 627 (N.D. Ala. 2009) ("Typicality generally presents a low burden that is easily satisfied").

Typicality is met if Plaintiffs and each member of the represented group have an interest in prevailing on similar legal claims. Assuming such an interest, particular factual differences, differences in the amount of damages claimed, or even the availability of certain defenses against a class representative may not render his or her claims atypical. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990).

Plaintiffs are the proposed class representatives in this Litigation. As with all other members of the proposed class during the Settlement Class period, Plaintiffs purchased Oasmia securities during the Class Period based on Defendants' allegedly materially false and misleading statements. The typicality requirement is satisfied.

20

**D.     Common Questions Predominate and the Class Is Superior to Other Methods of Adjudication**

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish that the proposed class satisfies Rule 23(b)(3). The Court must find that:

> questions of law or fact common to the members of the class predominate over any question affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3). Here, Plaintiffs satisfy the predominance and superiority criteria of Rule 23(b)(3).

In determining whether common questions predominate, courts focus on liability. "Where [] common questions predominate regarding liability [] courts generally find the predominance requirement to be satisfied." *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003). When common questions account for a significant portion of a case and can be resolved in a single action, class action status is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788 at 528 (1986). "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Smilow*, 323 F.3d at 39. Rule 23(b)(3) is satisfied in the "quintessential securities fraud class action" because "[a]n enormous group of potential plaintiffs" seek to recover and "[t]he focus of this litigation is upon the propriety defendants' conduct" and "defendants' potential liability." *In re Priceline.com Inc. Sec. Litig.*, 236 F.R.D. 89, 101-02 (D. Conn. 2006).

Predominance is "readily met" in securities class actions. *Amchem*, 521 U.S. at 625. Here, common questions predominate over individual issues as each investor purchased Oasmia securities which Plaintiffs allege were artificially inflated by the same alleged misrepresentations and/or omissions.

Factors relevant to a finding of superiority include:

21

(a)    the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(b)    the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class;

(c)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(d)    the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

The Court should balance the merits of certifying a class against other possible methods of adjudication. For most Settlement Class Members, a costly damages action is not a realistic or efficient option. Absent a class action, this Court would have to litigate numerous lawsuits. *See Smilow*, 323 F.3d at 41 ("The core purpose of Rule 23(b)(3) is to vindicate the claims of … groups of people whose individual claims would be too small to warrant litigation"). There will be no difficulties in managing this class action settlement.

As set forth above, a class action is the superior method of adjudication and satisfies the requirements of Rule 23(b)(3). Solely for the purposes of settlement, Settling Defendants do not dispute that the Settlement Class should be certified in accordance with Rule 23(b)(3). This Court should conditionally certify the Settlement Class for settlement purposes only.

## VII.    PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule of events leading to the Settlement Hearing as set forth in the Preliminary Order filed herewith:

| Event | Deadline for Compliance |
| --- | --- |
| Settlement Hearing | Plaintiffs suggest a date no fewer than one hundred (100) calendar days after entry of the Preliminary Approval Order. (Preliminary Approval Order ¶6) |

22

| Event | Deadline for Compliance |
|---|---|
| Mailing of Notice and Proof of Claim | No later than sixteen (16) calendar days after the entry of Preliminary Approval Order. (Preliminary Approval Order ¶11) |
| Publication of Summary Notice | No later than sixteen (16) calendar days following the entry of the Preliminary Approval Order. (Preliminary Approval Order ¶17) |
| Plaintiffs' papers in support of the Settlement, the Plan of Allocation, and application of attorneys' fees and expenses | No later than twenty-eight (28) calendar days prior to the Settlement Hearing. (Preliminary Order ¶28) |
| Requests for exclusion | No later than twenty-one (21) calendar days prior to the Settlement Hearing. (Preliminary Order ¶21.) |
| Objections | No later than twenty-one (21) calendar days prior to the Settlement Hearing (Preliminary Order ¶25) |
| Claim Forms | No later than forty-four (44) calendar days after entry of the Preliminary Approval Order (Preliminary Order ¶19(a)) |
| Plaintiffs' reply papers in support of the Settlement, the Plan of Allocation, and for application of attorneys' fees and expenses. | No later than seven (7) calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶29) |

## VIII.   CONCLUSION

Counsel for Plaintiffs and Oasmia reached this Settlement after extensive discussions and arm's-length negotiations. The Court need not finally determine whether the Settlement is fair, reasonable, and adequate. Instead, by granting preliminary approval, the Court only permits notice of the terms of the Settlement to be sent to the Settlement Class and schedules a hearing to consider any views expressed by the putative Class Members, the fairness of the Settlement, and Plaintiffs'

23

Counsel's request for an award of attorneys' fees and reimbursement of expenses. *Moore*, *supra*, § 23.83[1], at 23-336.2 to 23-339.

Thus, the Court should: (1) preliminarily certify the Settlement Class for the purposes of Settlement; (2) preliminarily approve the Settlement under the terms set forth in the Settlement Stipulation; (3) preliminarily approve the form and manner of Notice; and (4) set a Settlement Hearing date for final approval of the proposed Settlement.

DATED:  June 12, 2020                    Respectfully submitted,

<strong>HAGENS BERMAN SOBOL SHAPIRO LLP</strong>

By  */s/ Danielle Smith*
     DANIELLE  SMITH

Reed Kathrein
Lucas E. Gilmore
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
danielles@hbsslaw.com
reed@hbsslaw.com
lucasg@hbsslaw.com

Jason A. Zweig
HAGENS  BERMAN SOBOL SHAPIRO  LLP
555 Fifth Avenue, Suite 1700
New York, NY  10017
Telephone: (212) 752-5455
Facsimile:  (917) 210-3980
jasonz@hbsslaw.com

Steve W. Berman
HAGENS  BERMAN SOBOL SHAPIRO  LLP
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Co-Lead Counsel for Lead Plaintiffs*

24

*and the Proposed Class*

Dated:  June 12, 2020                                    **THE ROSEN LAW FIRM, P.A.**

By: /s/ Jonathan Horne
Jonathan Horne (JH 7258)
Phillip Kim (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile:  (212) 202-3827
Email: jhorne@rosenlegal.com
        pkim@rosenlegal.com
        lrosen@rosenlegal.com

*Co-Lead Counsel for Lead Plaintiffs and the proposed Class*

25

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2020, a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ENTRY OF ORDER PRELIMINARILY APPROVING SETTLEMENT AND ESTABLISHING NOTICE PROCEDURES** with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to counsel of record.

Executed on June 12, 2020

/s/ Jonathan Horne

Jonathan Horne