**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARK MIKHLIN, Individually and on Behalf of All Others Similarly Situated, <br><br> *Plaintiff*, <br><br> v. <br><br> OASMIA PHARMACEUTICAL AB, JULIAN ALEKSOV, MIKAEL ASP, ANDERS LUNDIN, FREDRIK GYNNERSTEDT, and ANDERS BLOM, <br><br> *Defendants*. | Case No.: 1:19-cv-04349-NGG-RER |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
**AND APPROVAL OF PLAN OF ALLOCATION**

010863-11/1426986 V1

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .....................................................................................................1

II.     PROCEDURAL HISTORY.........................................................................................2

III.    FACTS ....................................................................................................................3

IV.     ARGUMENT ...........................................................................................................4

        A.      Final Approval of Proposed Class Action Settlement ...............................4

                1.      Certification of the Class Pursuant to Fed. R. Civ. P. 23 is
                        Appropriate .....................................................................................4

                2.      The Court Should Finally Approve the Settlement because
                        it is Fair, Reasonable, and Adequate Under the Second
                        Circuit's *Grinnell* Factors ...............................................................5

                        i.      Complexity, Expense and Likely Duration of the
                                Litigation; Risks of Establishing Liability and
                                Damages...............................................................................6

                        ii.     Risk of Maintaining Class Action Status Through
                                Trial.....................................................................................8

                        iii.    Reaction of the Class ...........................................................9

                        iv.     Stage of Proceedings and Discovery Completed............................10

                        v.      Range of Reasonableness of the Settlement ..................................10

                        vi.     The Settlement Resulted From Arm's-Length
                                Negotiations ......................................................................11

        B.      Notice was adequate ..............................................................................12

        C.      The Court should approve the Plan of Allocation ..................................12

V.      CONCLUSION......................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Agent Orange Prod. Liab. Litig.*,
611 F. Supp. 1396 (E.D.N.Y. 1985) ...................................................................................11

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)..............................................................................7, 11

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012)..................................................................................................9

*In re AT & T Corp.*,
455 F.3d 160 (3d Cir. 2006)................................................................................................10

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003)...................................................................................9

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)....................................................................................5, 6, 9, 10

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)............................................................................................................12

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) (appellate decision in 2015 following verdict in
favor of plaintiffs remanding case brought in 2002 for further proceedings)..........................8

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................................13

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014)..............................................................................................................9

*In re Hi-Crush Partners L.P. Sec. Litig.*,
No. 12-CIV-8557 CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014)....................................5

*IBEW Loc. 90 Pension Fund v. Deutsche Bank AG*,
No. 11 CIV. 4209 KBF, 2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013) .................................9

*In re Lihua Int'l, Inc. Sec. Litig.*,
No. 14-CV-5037 (RA), 2016 WL 1312104 (S.D.N.Y. Mar. 31, 2016)...................................7

*In re Literary Works in Elec. Databases Copyright Litig.*,
654 F.3d 242 (2d Cir. 2011)................................................................................................12

- ii -

*Maywalt v. Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1995)..................................................................................5

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ......................................................................6, 11

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016) (securities class action filed in 2002 affirmed in
    2016) .................................................................................................................8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)..............................................................................5, 11

*In re Warner Commc'ns. Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)....................10

*In re Warner Commc'ns. Sec. Litig.*,
    798 F.2d 35 (2d Cir. 1986)..................................................................................6

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)..................................................................................5

## STATUTES

PSLRA ....................................................................................................................2

Securities Exchange Act of 1934 Section 10(b) ........................................................2, 9

## OTHER AUTHORITIES

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 (4th ed.
    2002) ...............................................................................................................11

Fed. R. Civ. P. 23..................................................................................................4

Fed. R. Civ. P. 23(e) .............................................................................................5

Federal Rules of Civil Rules 23(a) and (b)(3) ...........................................................4

## I.    INTRODUCTION[1]

Lead Plaintiffs Jeffrey Oster, Rosalind Schoof, and Mark Mikhlin ("Lead Plaintiffs" or "Plaintiffs") and Defendants have resolved this litigation in its entirety for $2,350,000 in cash ("Settlement"), or more than half of estimated best-case damages. The Settlement Class's recovery is only the more spectacular because it is prompt; the Parties agreed to settle the case about eight months after the case was filed.

The Settlement is a model of how counsel on both sides can quickly marshal the facts they will use to prove their claims, assess their merits, and employ a mediator to negotiate a settlement zealously that benefits both Defendants and the Settlement Class. The Court should approve the Settlement.

Further, experienced counsel formulated the Settlement's Plan of Allocation ("Plan of Allocation") with assistance from a damages expert. The Plan of Allocation equitably divides the Settlement between Settlement Class Members based on how many shares they bought, at what price, and when, and complies with loss causation principles. The Court should approve it.

As the Court ordered, copies of the Notice of Pendency and Proposed Settlement of Class Action ( "Notice") and Proof of Claim and Release Form ("Claim Form" and with the Notice, the "Notice and Claim Form") were mailed to potential Class Members, brokers, and nominee holders. Though the deadline for objection and exclusion is April 28, 2021, only a week away as this motion is filed, there have been no objections or requests for exclusion.

---

[1] Unless otherwise indicated, all capitalized terms have the same meanings as set forth in the Preliminary Approval of Class Action Settlement (*see* ECF No. 34-1).

## II.    PROCEDURAL HISTORY

Defendant Oasmia Pharmaceutical AB ("Oasmia") is a Swedish public company whose primary trading market is the Stockholm Stock Exchange. Oasmia floated a limited number of American Depositary Shares ("ADSs") on the NASDAQ stock exchange in the U.S. This action alleges that Oasmia, eleven of its former officers and directors, and Ernst & Young AB ("E&Y") (collectively, "Defendants") committed securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"). The Amended Complaint alleges claims on behalf of all persons who purchased or otherwise acquired Oasmia's ADSs from October 23, 2015, through October 14, 2019 (the "Class Period"). *See* ECF Nos. 1 and 23.

This action was filed on July 29, 2019. Jeffrey Oster, Rosalind Schoof, and Mark Mikhlin timely moved for appointment under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). ECF Nos. 5-9. The Court duly appointed them Lead Plaintiffs and approved their selection of Hagens Berman Sobol Shapiro LLP and The Rosen Law Firm, P.A. as Co-Lead Counsel ("Lead Counsel"). ECF No. 13.

On November 14, 2019, Lead Plaintiffs filed the Amended Class Action Complaint for Violations of The Federal Securities Laws (the "Amended Complaint" or "Compl."). ECF No. 23. Based on a wide-ranging investigation of English and Swedish-language sources, the Amended Complaint significantly broadened the legal theories, added many additional statements, expanded the Class Period, and added additional corrective disclosures.

The Parties held a mediation on March 6, 2020 and reached a conditional settlement. Joint Decl. ¶ 10. Lead Plaintiffs were permitted to terminate the Settlement if their confirmatory discovery showed that the Settlement was not fair, reasonable, adequate, and in the Settlement Class's best interest. Lead Plaintiffs' main objective was confirming Oasmia's representation that the number of ADSs in the market was lower than the number sold during the ADSs' initial public

- 2 -

offering ("IPO"). After confirming Oasmia's representation and reviewing a number of other documents, Lead Plaintiffs declined to exercise their right to terminate the Settlement. Joint Decl. ¶ 12. Lead Plaintiffs moved for preliminary approval. The Court granted Lead Plaintiffs' motion on January 6, 2021 (ECF No. 34), triggering the process of notifying Settlement Class Members to solicit claims, request exclusions, or object.

### III.   FACTS

On the first or second day of every month from the beginning of 2015 through the end of 2017, Oasmia's CEO, Julian Aleksov, and a Director on Oasmia's Board, Bo Cederstrand (Aleksov's father-in-law), transferred large portions of cash from Oasmia's bank accounts to their own. Within a day or two of the end of every month during that period, Aleksov and Cederstrand returned Oasmia's cash to its accounts. These ongoing transactions allowed Aleksov and Cederstrand to skim hundreds of thousands of dollars in interest through off-the-books related-party transactions. *See* Compl. ¶¶ 47-78.

But there is more. Aleksov and Cederstrand sold to Oasmia an asset Oasmia already owned, a transaction they forced Oasmia's board to accept. Compl. ¶¶ 79-85. They and their friends "bought" Oasmia convertible bonds but only paid for them when the bonds were in-the-money, thus making guaranteed profits. Compl. ¶¶ 115-127. To appeal to investors, Aleksov and Cederstrand recorded in Oasmia's financial statements that their company, Alceco, had offered Oasmia a roughly $5 million line of credit – without disclosing that their company had no money and owed $8 million. Compl. ¶¶ 96-114.

These actions each required specific disclosures in Oasmia's financial statements. Compl. ¶¶ 47-127. Yet the financial statements included no such disclosure, and were thus misleading.

The Amended Complaint further alleges that the Defendants' false statements caused Plaintiffs' losses through a series of corrective disclosures, or materialization of risks concealed

- 3 -

by the statements, throughout the Class Period. The Amended Complaint alleges that Aleksov and Cederstrand's misconduct caused a competent director to submit his resignation, whose February 28, 2017 announcement caused the price of Oasmia's stock to fall the next day. Compl. ¶¶ 187-88. When a shareholder attempted to take control of Oasmia, Aleksov and Cederstrand fought a vicious proxy battle to maintain control so as to conceal their fraud – a materialization of the risk of engaging in criminal fraud. Successive announcements in connection with the proxy battle caused Oasmia's stock price to drop further. Compl. ¶¶ 204-05, 208-09, 212-13, 217-20. Aleksov and Cederstrand ultimately lost the battle. As new management took over, it began releasing details of Oasmia's fraud, which caused its stock price to further decline. Compl. ¶¶ 222-26, 228-29. Then, because of Aleksov and Cederstrand's cash-depleting activities, Oasmia was forced to conduct a dilutive rights offering, further damaging investors. Compl. ¶¶ 235-36.

## IV.    ARGUMENT

### A.    Final Approval of Proposed Class Action Settlement

#### 1.    Certification of the Class Pursuant to Fed. R. Civ. P. 23 is Appropriate

In its Preliminary Approval Order, the Court ruled that the Settlement Class, defined as "all persons or entities who purchased or otherwise acquired publicly traded the American Depositary Shares ("ADSs") of Oasmia Pharmaceutical AB from October 23, 2015 through October 14, 2019, inclusive,"[2] satisfied "the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure…". ECF No. 34-1, at 1-2.

---

[2] Excluded from the Class are Defendants, the officers and directors of Oasmia, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which officer or director Defendants have or had a controlling interest. ECF No. 34-1, at 1-2.

No changes have occurred since the Preliminary Approval Order. Thus, the Court should finally certify this as a class action for purposes of the Settlement.

### 2.    The Court Should Finally Approve the Settlement Because it is Fair, Reasonable, and Adequate Under the Second Circuit's *Grinnell* Factors

When evaluating a proposed settlement under Fed. R. Civ. P. 23(e), a court must determine whether the settlement, taken as a whole, is fair, reasonable and adequate, and was not the product of collusion. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995). As a matter of public policy, courts strongly favor settlement. *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). This is particularly true of complex class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

A proposed class action settlement enjoys a presumption of fairness where, as here, it resulted from arm's-length negotiations conducted by skilled counsel experienced in class action litigation arising under the federal securities laws. *Wal-Mart*, 396 F.3d at 116. Indeed, "absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 WL 7323417, at *3 (S.D.N.Y. Dec. 19, 2014) (internal quotations omitted).

The principal factors courts employ to evaluate the fairness of a proposed settlement in the Second Circuit are settled:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement

fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). In weighing these factors, courts do not attempt to rewrite settlement agreements or try to resolve issues that are left undecided as a result of the parties' compromise, recognizing that settlements involve significant give and take between the negotiating parties. *See, e.g., In re Warner Commc'ns. Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986) ("It is not a district judge's job to dictate the terms of a class settlement."). The proposed settlement satisfy the *Grinnell* factors and the Court should therefore approve it.

### i. Complexity, Expense and Likely Duration of the Litigation; Risks of Establishing Liability and Damages

The complexity of proving Plaintiffs' claims and the risks that Plaintiffs are unable to do so weighs in favor of the Settlement. Securities class action cases are particularly "difficult and notoriously uncertain" with respect to both liability and damages issues. *See In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999).

This case is unusual because not only are Plaintiffs' allegations *strong*, Oasmia's current management has admitted that the allegations are *true*. While new management hardly speaks for Defendants (old management they displaced in an ugly proxy battle), Oasmia's new management's findings appear to be based on documentary evidence analyzed by an independent third-party accounting firm. *See* ECF No. 23-1. Thus, while there are still significant risks, Plaintiffs will likely be able to prove that Defendants committed fraud.

Yet Plaintiffs would still face considerable risk in proving liability even if they were *assured* that they could prove Defendants committed fraud. First, a judgment against Aleksov and Cederstrand is likely not collectible. They are residents of Sweden and, if Plaintiffs' allegations are correct, contorted themselves during the Class Period in part because they were unable to

satisfy an existing judgment. Recovery would likely have to come from Defendant Oasmia, but it has the additional defense that scienter cannot be imputed to it because of the adverse interest exception, "which directs a court not to impute to a corporation the bad acts of its agent when the fraud was committed for personal benefit." *In re Lihua Int'l, Inc. Sec. Litig.*, No. 14-CV-5037 (RA), 2016 WL 1312104, at *16 (S.D.N.Y. Mar. 31, 2016). Although recent authority rejects the adverse interest exception on a motion to dismiss for securities cases, *see id.* at *16-17, this rejection has not been tested at later stages of litigation.

Establishing liability and damages will be costly and complex if this case is litigated to trial. This case will be more difficult to litigate than most, principally for two reasons. First, Oasmia operates in Sweden and largely communicates in Swedish. Plaintiffs would have to hire Swedish-speaking attorneys to review Defendants' voluminous document production. They would have to translate a host of Swedish-language documents into English, at great expense. Depositions would take place half a world away in Sweden, and would likely require translators, creating more costs and difficulty.

Second, Plaintiffs must prove damages. Plaintiffs' expert must show that each of the corrective disclosures revealed new market-moving news. As to each of the corrective disclosures, Plaintiffs' expert must determine whether any confounding news released the same day had an impact on stock price. Plaintiffs must attribute a per-share "price" to each of these confounding pieces of news. The experts retained by Plaintiffs and Defendants will express diverging views on the range of recoverable damages at trial. Because it is impossible to predict which expert's testimony or methodology would be accepted by the jury, courts have recognized the need for compromise. *See generally In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426–27 (S.D.N.Y. 2001) (stating that "[i]n such a battle, Plaintiffs' Counsel recognize the possibility that

a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses."). But regardless of who ultimately won, the battle would require hundreds of hours—perhaps thousands—of painstaking expert work, whose costs the Settlement Class would shoulder.

Here, the Amended Complaint alleges a wide range of corrective disclosures. Plaintiffs risk not being able to prove loss causation for some of these disclosures. For example, the disclosures arising from the proxy battle between new and old management account for a large proportion of damages. While it is plausible that Aleksov and Cederstrand fought tenaciously to conceal their fraud, it is also possible that they simply wanted to maintain control of the Company. Further, if Defendants' motive was to conceal their fraud, the jury would have to examine a complex chain of loss causation. And because many of the disclosures coincided with other news, disaggregating fraud-related from non-fraud damages would be a complex and risky task.

Similarly, the length of further proceedings is daunting. The time from filing a securities class action to victory on appeal regularly exceeds a decade. *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 232 (2d Cir. 2016) (securities class action filed in 2002 affirmed in 2016); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 413 (7th Cir. 2015) (appellate decision in 2015 following verdict in favor of plaintiffs remanding case brought in 2002 for further proceedings). This case is at its very beginning. Absent the Settlement, Plaintiffs would have to defeat a motion to dismiss, certify a class, conduct fact discovery, conduct expert discovery, survive summary judgment, win at trial, and survive the inevitable appeals. The Settlement will avoid the complexity and uncertainty of these anticipated further proceedings.

### ii.    Risk of Maintaining Class Action Status Through Trial

If the Amended Complaint survived Defendants' motion to dismiss (which, admittedly, it likely would), Plaintiffs would have to move for class certification. This motion would be

expensive and time-consuming, requiring expert discovery to show that Oasmia stock traded on an efficient market that entitles investors to a presumption of reliance on Defendants' alleged false statements and omissions. Defendants could then attempt to rebut that presumption by showing a lack of price impact. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 281 (2014). While courts typically certify proposed classes of investors in equity securities, Oasmia is a small, relatively thinly-traded company, which creates a real risk that the Court would deny certification.[3]

Further, while Oasmia's ADSs traded in the U.S., its common stock traded at much greater volume on its home stock exchange in Stockholm. Proving that the U.S. market is efficient where it is secondary necessitates further analysis and creates substantial uncertainty – particularly where, as here, there is little overlap between trading hours in the U.S. and the primary market. *See IBEW Loc. 90 Pension Fund v. Deutsche Bank AG*, No. 11 CIV. 4209 KBF, 2013 WL 5815472, at *21 (S.D.N.Y. Oct. 29, 2013) (denying class certification where expert did not determine whether trading on the principal, German market was efficient).

### iii.    Reaction of the Class

Courts have repeatedly held that "one indication of the fairness of a settlement is the lack of or small number of objections." *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003); *Grinnell,* 495 F.2d at 462 (approving settlement where 20 objectors appeared from group of 14,156 claimants).

With the deadline to object only a week away, *no* Settlement Class Members have objected.

---

[3] Even if Plaintiffs had no hope of proving market efficiency – a far cry from the mere uncertainty this case raises – that fact would not weigh against approving a settlement class. *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 243 (2d Cir. 2012) ("Where a Section 10(b) settlement class would otherwise satisfy the predominance requirement, the fact that the plaintiff class is unable to invoke the presumption, without more, is no obstacle to certification.").

### iv.     Stage of Proceedings and Discovery Completed

The Settlement was reached after Plaintiffs investigated and filed a detailed complaint and the Amended Complaint. The parties exchanged mediation briefs discussing the merits of the case and attended an all-day mediation. Plaintiffs also obtained confirmatory discovery from Defendants to confirm that they correctly understood the facts.

Before entering into the Settlement, therefore, Lead Counsel understood the strengths and weaknesses of Plaintiffs' case, and understood Defendants' position on the issues. Courts favor such informed settlements. *See In re Warner Commc'ns. Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) (settlement approved where the parties "have a clear view of the strengths and weaknesses of their cases").

### v.     Range of Reasonableness of the Settlement

Some discount needs to be offered to a settling defendant or it would have no economic incentive to settle. Furthermore, in a factually and legally complex securities class action, responsible class counsel cannot be certain that they will be able to obtain and enforce a judgment at or near the full amount of the class-wide damages they claim.

The Second Circuit has held that "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455 (footnote omitted); *accord In re AT & T Corp.*, 455 F.3d 160, 170 (3d Cir. 2006). A recent report explains that cases with damages of less than $25 million settled for a median of 19.7% of damages in 2020 and 16.8%

in the period 2010 through 2019.[4] Here, estimated damages are $4.5 million – so the Settlement recovers more than half of what Plaintiffs could obtain if they won on every point at trial.

Moreover, "much of the value of a settlement lies in the ability to make funds available promptly." *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985). The Settlement provides for payment to Class Members with certainty, not just potentially, and *now*, not in a decade.

### vi.    The Settlement Resulted From Arm's-Length Negotiations

The experience and reputation of the parties' counsel and the arm's-length nature of the negotiations are entitled to great weight. *See, e.g.*, *Wal-Mart*, 396 F.3d at 116 (quoting *Manual for Complex Litigation, Third*, § 30.42 (1995)) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery'"); *American Bank Note*, 127 F. Supp. 2d at 428 ("Courts have looked to ensure that the settlement resulted from arm's-length negotiations between counsel possessed of experience and ability necessary to effective representation of the class's interests") (internal quotations omitted).

Courts recognize that the opinion of experienced and informed counsel supporting settlement is powerful evidence of fairness. *See Sumitomo*, 189 F.R.D. at 280 (courts award "great weight" to counsel's judgment that a settlement reached through arm's-length negotiation is fair); 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 at 87-89 (4th ed. 2002).

The record demonstrates the Settlement's procedural fairness. The Second Circuit has held that "[t]he participation of [a] mediator [] in this case, while by no means ensuring fully adequate

---

[4] Cornerstone Research, Securities Class Action Settlements: 2020 Review and Analysis, at 6 (available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis), last viewed April 21, 2021.

representation, does make it more likely that the parties reached the limits of compromise." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 263 (2d Cir. 2011). The proposed Settlement was negotiated before Jed Melnick, a respected mediator. Counsel on both sides had decades of experience in high-stakes securities litigation. Their experience allowed counsel on both sides to judge how the issues in this case would be resolved. Armed with this insight, counsel on both sides negotiated the Settlement before spending millions of dollars of the Parties' own resources litigating the issues or hours of the Court's time deciding them.

**B.    Notice was adequate**

Plaintiffs fully complied with the Court's Order concerning notice, which was designed to provide Class Members with constitutionally sufficient notice of this action and of their opportunity to be heard, and was written in plain, easily-understood English. *See* Joint Declaration of Reed R. Kathrein and Jonathan Horne in Support of (1) Lead Plaintiffs' Motion for Final Approval of the Proposed Class Action Settlement and (2) Co-Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Lead Plaintiffs ("Joint Decl."), Ex. 1. The notice advised Class Members of their right to opt-out of or object to any part of the Settlement by April 28, 2021. *Id.* To date, there have been zero requests for exclusions or objections. *Id.* These facts weigh in favor of final approval of the Settlement.

**C.    The Court should approve the Plan of Allocation**

The Plan of Allocation was fully described in the Notice sent to the members of the Settlement Class. *See* Joint Decl., Ex. 1. It was formulated by Plaintiffs' Counsel in consultation with a financial consultant, with the goal of reimbursing Class Members in a fair and reasonable manner consistent with the federal securities laws and the principles of loss causation. Joint Decl. ¶¶ 13-15. To that end, the Plan of Allocation does not compensate losses resulting from "in and out" transactions, *i.e.* losses from sales made prior to revelation of truth. *See Dura Pharm., Inc. v.*

*Broudo*, 544 U.S. 336, 342 (2005) ("But if, say, the purchaser sells the shares before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). The Plan of Allocation requires any gains from Class Period transactions to be netted with losses from Class Period transactions, which is rational and reasonable. Once these considerations are taken into account, the Plan of Allocation provides that each authorized claimant will receive a *pro rata* share of the Net Settlement Fund (*i.e.*, Settlement Amount less attorneys' fees and expenses, and award to Lead Plaintiff). *See* Joint Decl. Ex. 1.

In addition to excluding those who incurred no provable damages, the Plan of Allocation also recognizes differences in damages incurred by those who bought and sold their shares at different times during the Class Period, reflecting the different damages due to the purchase and sale prices that they paid. *See* Joint Decl. Ex. 1. The Plan of Allocation does not discriminate between Class Members in the same position: the Net Settlement Fund is distributed on a *pro rata* basis depending on a Class Members' recognized losses.

The Plan of Allocation has a rational basis and fairly compensates Class Members. This Court should approve the Plan of Allocation. *See In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) ("When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational basis.'").

## V.   CONCLUSION

For the foregoing reasons, the Court should finally certify the Settlement Class and approve the proposed class action settlement, the notice plan, and the Plan of Allocation.

Dated:  April 21, 2021.

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: */s/ Reed R. Kathrein*

Reed R. Kathrein (*pro hac vice*)
Danielle Smith (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
danielles@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Co-Lead Counsel*

**THE ROSEN LAW FIRM, P.A.**

By: */s/ Jonathan Horne*

Jonathan Horne
Phillip Kim
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile:  (212) 202-3827
Email: pkim@rosenlegal.com
Email: jhorne@rosenlegal.com

*Co-Lead Counsel*

- 14 -

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2021, a true and correct copy of the foregoing document

was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Jonathan Horne*

Jonathan Horne