**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARK MIKHLIN, Individually and On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>   v.<br><br>OASMIA PHARMACEUTICAL AB, JULIAN ALEKSOV, MIKAEL ASP, ANDERS LUNDIN, FREDRIK GYNNERSTEDT, and ANDERS BLOM,<br><br>          Defendants. | No.  1:19-cv-04349-NGG-RER<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES,**
**AND AWARDS TO LEAD PLAINTIFFS**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................... 1

II.    FACTS ...................................................................................................................... 1

III.    ARGUMENT ............................................................................................................ 2

        A.    The Requested Fee Is Reasonable .................................................................. 2

                1.    Legal Standards for an Award of Attorneys' Fees Support Approval of the Requested Fee ...................................................... 2

                2.    The Requested Fee is Fair and Reasonable Under the Percentage-of-Recovery Method and the Second Circuit's *Goldberger* Factors .................................................................... 2

                        a.    The Quality of Representation Justifies An Award of One-Third of the Settlement Fund ............................................ 3

                        b.    The Risks of the Litigation Justify An Award of One-Third of the Settlement Fund .................................................. 5

                        c.    The Magnitude and Complexity of the Litigation Justify an Award of One-Third of the Settlement Fund ........................................... **Error! Bookmark not defined.**

                        d.    The Requested Fee in Relation to the Settlement Justifies An Award of One-Third of the Settlement Fund .................................................................................. 9

                        e.    Public Policy Considerations Justify An Award of One-Third of the Settlement Fund ................................................ 11

                        f.    The Time and Labor Expended by Counsel Justifies An Award of One-Third of the Settlement Fund, Which the Lodestar Cross-Check Confirms ............................... 11

        B.    A Quick-Pay Provision Is Appropriate In This Case ........................................... 14

        C.    The Court Should Permit Counsel to Recover Its Expenses ................................ 15

        D.    The Proposed Award to Plaintiffs is Reasonable ................................................ 16

IV.    CONCLUSION ....................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re AOL Time Warner, Inc.*,
   No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...............................6, 8

*Aponte v. Comprehensive Health Mgmt., Inc.*,
   No. 10 CIV. 4825 JLC, 2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013) ....................................13

*In re AT & T Corp.*,
   455 F.3d 160 (3d Cir. 2006)...................................................................................................13

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA)
   Litig.*,
   772 F.3d 125 (2d Cir. 2014)...................................................................................................16

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985)................................................................................................................11

*Becher v. Long Island Lighting Co.*,
   64 F. Supp. 2d 174 (E.D.N.Y. 1999) ........................................................................................9

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ..............................................................................................7

*In re Blech Sec. Litig.*,
   No. 94 CIV. 7696 (RWS), 2002 WL 31720381 (S.D.N.Y. Dec. 4, 2002) .............................10

*Blum v. Stenson*,
   465 U.S. 886 (1984)..............................................................................................................2, 9

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)..................................................................................................................2

*Burns v. FalconStor Software, Inc.*,
   No. 10 CV 4572 (ERK), 2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) ...............................13

*Christine Asia Co., Ltd. v. Yun Ma*,
   No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16,
   2019) .......................................................................................................................................12

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974).............................................................................................4, 5, 12

*In re Colgate-Palmolive Co. ERISA Litig.*,
   36 F. Supp. 3d 344 (S.D.N.Y. 2014)......................................................................................12

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-CV-1825 (NGG), 2010 WL 2653354 (E.D.N.Y. June 24, 2010)......................5, 12, 13

*In re Elan Sec. Litig.*,
  385 F. Supp. 2d 363 (S.D.N.Y. 2005)....................................................................................13

*Eltman v. Grandma Lee's, Inc.*,
  No. 82 CIV. 1912, 1986 WL 53400 (E.D.N.Y. May 28, 1986) .........................................4, 11

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...................................12

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  No. MDL 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015), *aff'd sub*
  *nom. In re Facebook, Inc.*, 674 F. App'x 37 (2d Cir. 2016)....................................................10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-CV-3400 (CM), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)..................................6, 7

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) .....................................................................................10, 17

*In re Gilat Satellite Networks, Ltd.*,
  No. CV–02–1510, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ................................3, 15, 16

*In re Global Crossing Sec. and ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .........................................................................................3, 7

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)...........................................................................................2, 3, 5, 12

*Hart v. BHH, LLC*,
  334 F.R.D. 74 (S.D.N.Y. 2020) .........................................................................................14, 15

*Hernandez v. Between the Bread 55th Inc.*,
  No. 17-CV-9541 (LJL), 2020 WL 6157027 (S.D.N.Y. Oct. 21, 2020)..................................15

*In re Ikon Office Solns., Inc. Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000)...............................................................................................6

*Johnson v. US Auto Parts Network, Inc.*,
  2008 WL 11343481 (C.D. Cal. Oct. 9, 2008)........................................................................17

*In re KeySpan Corp. Sec. Litig.*,
  No. 01 CV 5852(ARR), 2005 WL 3093399 (E.D.N.Y. Sept. 30, 2005) ..................................5

*Khait v. Whirlpool Corp.*,
  No. 06 CV 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)..............................................10

*Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp.*,
 No. CIVA 03-CV-4372 DMC, 2009 WL 4730185 (D.N.J. Dec. 4, 2009) ...............................8

*Maley v. Del Global Tech. Corp.*,
 186 F. Supp. 2d 358 ............................................................................................................13

*In re MetLife Demutualization Litig.*,
 689 F. Supp. 2d 297 (E.D.N.Y. 2010) .................................................................................16

*Mikhlin, et al. v. Oasmia Pharmaceutical AB, et al.*,
 19-CV-4349 (NGG) (RER), 2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ........................10, 14

*Missouri v. Jenkins by Agyei*,
 491 U.S. 274 (1989).............................................................................................................9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
 No. 05MD1720MKBJO, 2019 WL 6888488 (E.D.N.Y. Dec. 16, 2019) .................................5

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
 No. 05 MD 172, 2014 WL 92465 (E.D.N.Y. Jan. 10, 2014) ..................................................10

*Roberts v. Texaco, Inc.*,
 979 F. Supp. 185 (S.D.N.Y. 1997) ......................................................................................12

*In re Signet Jewelers Ltd. Sec. Litig.*,
 No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) .......................7

*State of W. Va. v. Chas. Pfizer & Co.*,
 314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd,* 440 F.2d 1079 (2d Cir. 1971) ..............................6

*Vaccaro v. New Source Energy Partners L.P.*,
 No. 15 CV 8954 (KMW), 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ..............................10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005)...............................................................................................2, 3

*In re WorldCom, Inc. Sec. Litig.*,
 388 F. Supp. 2d 319 (S.D.N.Y. 2005).................................................................................2

*Yedlowski v. Roka Bioscience, Inc.*,
 No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016)..............................6

### STATUTES

15 U.S.C. § 78u-4(a)(4) ...........................................................................................................16

15 U.S.C. § 78u-4(a)(6) ...........................................................................................................3

PSLRA .............................................................................................................................3, 6, 7, 16

## I.  INTRODUCTION

Eight months after this lawsuit was filed, Co-Lead Counsel secured a settlement that recovers more than half of estimated maximum damages. The percentage recovery is quadruple the average in cases of this size and it comes years earlier than the average settlement. Co-Lead Counsel achieved this exceptional outcome by skillfully discovering and presenting the facts that would maximize the recovery; accurately judging that this case had potential for a quick and exceptional recovery; and zealously working to turn that opportunity into a settlement.  These results, among other things, justify Co-Lead Counsel's request for a fee of one-third of the Settlement Fund, or $783,333.

Co-Lead Counsel also seeks reimbursement of $40,727.96 in out-of-pocket litigation expenses they reasonably incurred in prosecuting this Action. These costs are the kind that are customarily invoiced to and paid by clients.

Finally, it was Lead Plaintiffs' work that assisted in securing this exceptional Settlement. They request a modest award of $6,000 each, or $18,000 in total, to compensate them for their time.

Co-Lead Counsel and the representative Plaintiffs steered this action to a successful conclusion, amply justifying the requests they make. The Court should therefore approve attorneys' fees of $783,333, approve reimbursement of $40,727.96 in expenses, and award Lead Plaintiffs $6,000 each ($18,000 in total).

## II.  FACTS

A detailed description of the procedural history, settlement negotiations, and the considerations leading to the Settlement is set forth in the Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Final Approval of the Proposed Class Action Settlement ("Final Approval Brief"), filed concurrently herewith and incorporated by reference herein.

### III.    ARGUMENT[1]

**A.    The Requested Fee Is Reasonable**

**1.    Legal Standards for an Award of Attorneys' Fees Support Approval of the Requested Fee**

The Supreme Court, the Second Circuit, and district courts within this Circuit have all recognized that counsel should be compensated from any "common fund" they created for the benefit of a class. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 354 (S.D.N.Y. 2005).[2] Attorneys' fee awards from common funds both encourage representatives to seek redress for damages caused to an entire class of persons and prevent that class from being unjustly enriched by the representative's success. *See Boeing*, 444 U.S. at 478.

**2.    The Requested Fee is Fair and Reasonable Under the Percentage-of-Recovery Method and the Second Circuit's *Goldberger* Factors**

The Supreme Court has held that courts may employ the percentage-of-recovery approach to determine attorneys' fees in common fund cases. *See Blum v. Stenson*, 465 U.S. 886, 900, n.16 (1984). Thereafter, in *Goldberger*, the Second Circuit examined the history of the alternative methods for calculating attorneys' fees and approved the percentage-of-recovery method in awarding fees from a common fund. *Goldberger*, 209 F.3d at 50. Since then, "[t]he trend in this Circuit is toward the percentage method" when awarding attorneys' fees in common fund cases. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). That is because, in part, the percentage method "directly aligns the interests of the class and its counsel and provides

---

[1] Emphasis is added and internal citations and quotations are omitted unless otherwise indicated.

a powerful incentive for the efficient prosecution and early resolution of litigation." *Id.* The percentage of recovery method also comports with the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6); *In re Gilat Satellite Networks, Ltd.*, No. CV–02–1510, 2007 WL 2743675, at *13 (E.D.N.Y. Sept. 18, 2007).

The Second Circuit has set forth six factors that courts should consider in determining whether a fee request is reasonable. These are: (1) the quality of the representation; (2) the risks of litigation; (3) the magnitude and complexity of litigation; (4) the requested fee in relation to the settlement; (5) public policy consideration; and (6) time and labor expended by counsel. *Goldberger*, 209 F.3d at 50 (2d Cir. 2000). As to the time-and-labor factor, courts often also cross-check the requested fee against the lodestar. Each of these factors supports a fee of one-third of the Settlement fund.

### a.  The Quality of Representation Justifies An Award of One-Third of the Settlement Fund

The best evidence of the quality of Co-Lead Counsel's representation is the recovery it achieved. *See, e.g.*, *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) ("The quality of Securities Lead Counsel's representation is evidenced by the recovery obtained for the [] Class[].").

The Settlement reflects the skill both Plaintiffs' and Defendants' counsel brought to this action. Plaintiffs' counsel scoured Swedish and U.S. public documents to construct a detailed timeline of developments in Oasmia's corporate history. Counsel identified instances in which Oasmia's stock price fell in response to Swedish or English language news. Counsel then formulated a theory of the case based on the liability facts Counsel discovered. Counsel sought to

link as many of the declines to the fraud as the facts would allow. Counsel's ambitious theory thus maximized the proportion of Settlement Class Members' losses that would be treated as compensable damages. Joint Decl. ¶7.

Counsel then negotiated a favorable Settlement. Counsel for both Plaintiffs and Defendants are seasoned and talented attorneys. Plaintiffs' Counsel was confident that the case would survive Defendants' motion to dismiss. Yet survival would leave Plaintiffs mired in expensive and protracted litigation that they might, for purely technical reasons, lose. The Parties thus responsibly negotiated a resolution that would save both the Settlement Class Members and Defendants from such litigation. The Settlement benefits Defendants by providing certainty, but it also recovers more than half of what Plaintiffs could expect if they won at trial on every point of their ambitious theory. As set out in the Final Approval Brief, the Settlement far exceeds the proportion plaintiffs typically recover in cases of this size. The Settlement, moreover, is all the more exceptional because it was reached about eight months after the case was filed—thus ensuring that Settlement Class members will be paid promptly.

By skillfully discovering and presenting the facts, Plaintiffs' Counsel created an opportunity to settle this case early on favorable terms. Plaintiffs' and Defendants' Counsel seized the opportunity, benefiting their respective clients.

Co-Lead Counsel's prior experience and standing is also relevant in determining fair compensation. *See, e.g.*, *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974); *Eltman v. Grandma Lee's, Inc.*, No. 82 CIV. 1912, 1986 WL 53400, at *4 (E.D.N.Y. May 28, 1986). Here, Plaintiffs and the Settlement Class are represented by The Rosen Law Firm, P.A. ("Rosen") and Hagens Berman Sobol Shapiro LLP ("Hagens Berman") as Co-Lead Counsel. As their firm resumes demonstrate, Co-Lead Counsel have extensive experience in the specialized

- 4 -

field of shareholder securities litigation.[3] Co-Lead Counsel leveraged their experience and resources to assess the merits and value of the case and negotiated the Settlement.

The quality and vigor of opposing counsel is also important in evaluating the services rendered and challenges overcome by Co-Lead Counsel. *See, e.g.*, *In re KeySpan Corp. Sec. Litig.*, No. 01 CV 5852(ARR), 2005 WL 3093399, at \*12 (E.D.N.Y. Sept. 30, 2005) (citing *In re Warner Commc'ns*, *Sec. Litig.,* 618 F. Supp. 735, 749 (S.D.N.Y. 1985)). Here, Defendants were represented by Latham & Watkins LLP, whose reputation needs no burnishing, and its partner Jeff Hammel, chair of its New York Litigation & Trial Department. That Co-Lead Counsel achieved the Settlement while opposed by pre-eminent attorneys further justifies a fee of one-third of the Settlement fund.

### b.    The Risks of the Litigation Justify An Award of One-Third of the Settlement Fund

The requested fee is also reasonable because Co-Lead Counsel obtained an excellent result though they faced substantial risks. "[T]he risk of success [is] 'perhaps the foremost' factor to be considered" in determining a reasonable fee. *Goldberger*, 209 F.3d at 54. "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." *Grinnell Corp.*, 495 F.2d at 470.

This Court, like others, has recognized that "class actions confront even more substantial risks than other forms of litigation," *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG), 2010 WL 2653354, at \*5 (E.D.N.Y. June 24, 2010); *In re Payment Card Interchange Fee*

---

[3] Rosen and Hagens Berman's firm resumes are attached as Exhibits 4 and 5 to Joint Declaration of Reed R. Kathrein and Jonathan Horne in Support of (1) Lead Plaintiffs' Motion for Final Approval of the Proposed Class Action Settlement and (2) Co-Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Lead Plaintiffs ("Joint Decl.") concurrently filed herewith.

*& Merch. Disc. Antitrust Litig.*, No. 05MD1720MKBJO, 2019 WL 6888488, at *14 (E.D.N.Y. Dec. 16, 2019) (same). Securities class actions in particular are "notably difficult and notoriously uncertain." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM), 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010). Further, "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA" and other changes in the law. *In re Ikon Office Solns., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also AOL Time Warner*, 2006 WL 903236, at *9 ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages."). Indeed, "[l]egal precedents are continually making it more difficult to plead securities class actions." *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016). For these reasons, the risks of securities class actions are especially high and warrant a higher fee.

Further, courts recognize "from past experience that no matter how confident [an attorney] may be of the outcome of litigation, such confidence is often misplaced." *State of W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743–44 (S.D.N.Y. 1970), *aff'd,* 440 F.2d 1079 (2d Cir. 1971). The *Pfizer* court pointed to two instances in which it had disapproved of proposed settlements only for the plaintiffs to recover nothing or less than the settlement the defendants had offered. *Id.* In many cases, including some of Co-Lead Counsel's, attorneys pursued securities class actions for years only to have summary judgment entered against them or win a judgment they could not collect.

From the outset, Co-Lead Counsel understood they were embarking on a complex, expensive, and potentially lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, counsel ensured that sufficient resources were dedicated to the action and that funds

were available to compensate staff and to cover the expenses the case would require. With an average lag time of several years for a case like this to conclude, the financial burden on Co-Lead Counsel was greater than those for a firm paid on an ongoing basis, as defense counsel are. *See Flag Telecom*, 2010 WL 4537550, at *27.

"'[L]itigation risk must be measured as of when the case is filed,' rather than with the hindsight benefit of subsequent events." *Global Crossing*, 225 F.R.D. at 467 (quoting *Goldberger*, 209 F.3d at 55). When this case was filed, Co-Lead Counsel foresaw protracted investigation and litigation of a foreign company operating in a small country with a niche, foreign language. Finding a Swedish investigator skilled in the kind of investigation the PSLRA requires would prove difficult. Moreover, with a threatened criminal investigation, it was unlikely witnesses with knowledge would voluntarily involve themselves in civil litigation. Joint Decl. ¶ 6.

After this case was filed, Oasmia published a detailed report in which it accused its former management—and, through principles of agency, itself—of fraud. Co-Lead Counsel leveraged this disclosure to plead a case and negotiated an exceptional settlement before Defendants filed their motion to dismiss. But while these developments made a quick, impressive settlement possible, they were not predictable when the case was filed. Oasmia's confession, while commendable, is unusual. This case was exceptionally risky when it was filed, and that is the measure courts apply.

Courts also consider the risks that counsel will not be paid because the defendants will file for bankruptcy. *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 480 (S.D.N.Y. 2013); *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *19 (S.D.N.Y. July 21, 2020) (risks justifying higher award included "Defendants' potential inability to withstand a greater judgment.").

When this case was filed, Oasmia found itself in acute financial distress. In its latest quarter, it had earned about $50,000 in revenues, but lost more than $5 million.[4] It had less than a year's worth of cash left. Its current management was embroiled in a dispute and several lawsuits with its former management, with both sides accusing the other of fraud, casting doubt on whether Oasmia could raise the capital it needed to keep operating. The risk that Oasmia would file for bankruptcy, though it was not realized, loomed large.

### c.    The Magnitude and Complexity of the Litigation Justify an Award of One-Third of the Settlement Fund

Courts recognize that securities class actions are "notorious[ly] complex[]." *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *see also Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp.*, No. CIVA 03-CV-4372 DMC, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) (securities class actions "inherently complex").

The underlying misconduct in this case took place in a small country at a company that conducted its business in Swedish. Oasmia attracted far more attention in the non-English, Swedish language press. Swedish is a niche language, with only 10 million speakers worldwide, 90% of whom reside in Sweden. *The Challenge of Learning Swedish*, (available at https://sweden.se/culture-traditions/the-challenge-of-learning-swedish/, last visited April 21, 2021).

Finding U.S.-barred Swedish-speaking attorneys to assist in this litigation would be a considerable challenge. The Swedish-American Bar Association lists member Swedish-speaking

---

[4]    https://www.sec.gov/Archives/edgar/data/1607245/000114420419033035/tv524514_ex99-2.htm, last viewed April 21, 2021.

attorneys in the U.S. There are fifteen. Swedish-American Bar Association List of Members, (available at https://www.saba-advokat.com/members-in-alphabetical-order ).

Obtaining third-party discovery in Sweden would also prove challenging. Plaintiffs would have to proceed through the Hague Convention on the Taking of Evidence Abroad. When making a Hague request, the receiving country decides how much discovery to allow. Receiving countries invariably allow less discovery than is available through U.S. subpoenas. Further, while subpoenas can be served on notice to the opposing counsel, to obtain letters rogatory, plaintiffs must file a motion in this Court, obtain a favorable ruling, and then file an enforcement proceeding in the receiving country. While delays vary by country, in Co-Lead Counsel's experience, they are considerable. Further, in Co-Lead Counsel's experience, the propounding party will likely pay the letters rogatory target's attorney's fees. Thus, discovery through letters rogatory is burdensome, time-consuming, and expensive. Joint Decl. ¶ 8.

Finally, litigating in a foreign country requires learning that country's accounting rules, business customs and practices, and general culture. The process always takes time, money, and legal advice.

### d. The Requested Fee in Relation to the Settlement Justifies An Award of One-Third of the Settlement Fund

A fee should approximate what counsel would receive when bargaining in the marketplace. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989). In the marketplace, the customary fee arrangement in individual contingent-fee cases is between 30% and 40% of the recovery. *See Blum*, 465 U.S. at 903 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (Brennan, J., concurring).

The fee request of one-third of the Settlement Fund net of expenses, or $783,333, is well in line with percentages that courts in this District and within the Second Circuit have awarded in

similar common fund settlements. *See, e.g.*, *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (one-third fee of $7.8 million settlement, is "well within the range accepted by courts in this circuit"); *Khait v. Whirlpool Corp.*, No. 06 CV 6381, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (citing cases and awarding attorneys' fees equal to 33% of $3 million fund); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 05 MD 172, 2014 WL 92465, at *6 (E.D.N.Y. Jan. 10, 2014) (awarding fees on a graduated schedule including 33.3% to the first $10 million of the settlement, and noting it is "very common" to see 33% contingency fees in settlements less than $10 million); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12-2389, 2015 WL 6971424, at *12 (S.D.N.Y. Nov. 9, 2015), *aff'd sub nom. In re Facebook, Inc.*, 674 F. App'x 37 (2d Cir. 2016) (awarding one third of attorneys' fees of $26,500,000 settlement); *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *8 (S.D.N.Y. Dec. 14, 2017) (awarding one-third of $2,850,000 settlement); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 166 (S.D.N.Y. 2011) (awarding one third of $13 million settlement); *In re Blech Sec. Litig.*, No. 94 CIV. 7696 (RWS), 2002 WL 31720381 (S.D.N.Y. Dec. 4, 2002) (awarding one-third of $2,795,000 settlement). Indeed, in granting Plaintiffs' Motion for Preliminary Approval, the Court found that "[c]ourts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are 'well within the range of reasonableness.'" *Mikhlin, et al. v. Oasmia Pharmaceutical AB, et al.*, 19-CV-4349 (NGG) (RER), 2021 WL 1259559, at *7 (E.D.N.Y. Jan. 6, 2021) (internal citation omitted).

Under the percentage-of-recovery approach, the attorneys' fee requested by Co-Lead Counsel is fair and reasonable for litigation of this kind and is supported by previous awards made by courts in this Circuit.

- 10 -

  **e.**  **Public Policy Considerations Justify an Award of One-Third of the Settlement Fund**

Private securities actions, especially class actions, are "'a most effective weapon in the enforcement' of the securities laws and [] 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985). Those lawsuits require competent counsel to prosecute them. *Eltman*, 1986 WL 53400, at *4. Competent counsel will only take on the lawsuits if they can expect reasonable and adequate compensation for their services where they achieve results. "To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding." *Id.* Thus, public policy favors Co-Lead Counsel's fee request.

  **f.**  **The Time and Labor Counsel Expended Justifies an Award of One-Third of the Settlement Fund, Which the Lodestar Cross-Check Confirms**

Co-Lead Counsel worked diligently to achieve the Settlement, expending 809.26 hours for an aggregate lodestar of $531,950.50. *See* Joint Decl. ¶¶ 16-20, Exs. 2 and 3. To litigate this action, Co-Lead Counsel: (1) investigated the claims in this action to plead an initial complaint; (2) scoured English and Swedish-language public records and obtained documents from Swedish authorities; (3) translated key documents into English; (4) consulted with an accounting and auditing expert to plead violations of both accounting and auditing standards; (5) deliberated with a damages expert to identify corrective disclosure dates and damages scenarios; (6) drafted and filed a detailed 102-page Amended Complaint (*see* ECF No. 23); (7) drafted a mediation brief; (8) participated in a full-day mediation; (9) ensured that the Settlement agreement contained key provisions obligating Defendants to produce to Plaintiffs a limited number of documents that confirmed the Settlement's key assumptions; (10) drafted and negotiated the Stipulation and Agreement of Settlement and exhibits thereto, and filed them alongside Plaintiffs' motion for

preliminary approval of the Settlement; and (11) supervised the program to provide notice to the Settlement Class. Further, Co-Lead Counsel divided up work in the action to avoid duplicating work and ensured that all work was performed efficiently. Joint Decl. ¶ 17.

Thus, the time and labor Co-Lead Counsel invested in this case justify the requested fee.

This Court may also consider whether the requested fee determined under the percentage approach is consistent with an award that would result under the lodestar/multiplier approach. *Grinnell*, 495 F.2d at 470-71. When performing a lodestar "cross-check," the hours documented "need not be exhaustively scrutinized." *Goldberger*, 209 F.3d at 50. Here, the lodestar multiplier is 1.47. *See* Joint Decl. ¶ 19. This is a reasonable multiplier that falls comfortably in line with multipliers approved by courts in this Circuit and in courts around the country. *See e.g., In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *17 (S.D.N.Y. July 27, 2007) ("[l]odestar multipliers of nearly 5 have been deemed 'common' by courts in this District."); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (awarding attorney's fees representing a multiplier of 5.2); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197 (S.D.N.Y. 1997) (awarding a multiplier of 5.5).

The hourly rates used by Co-Lead Counsel to arrive at the lodestar calculation are the firm's current, customary rates. *See* Joint Decl. ¶¶ 16-19, Exs. 2 and 3. Courts in this Circuit have approved Co-Lead Counsel's requests for attorneys' fees based on the same or similar rates as those submitted here. *See, e.g., Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *17 (S.D.N.Y. Oct. 16, 2019). Indeed, in 2010, this Court found reasonable hourly rates of up to $880. *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG), 2010 WL 2653354, at *4 (E.D.N.Y. June 24, 2010). Since then, the price of legal services has increased about 29%, suggesting that an hourly rate of up to $1,131 would be reasonable. Legal

Rate Inflation Calculator, (available at https://www.in2013dollars.com/Legal-services/price-inflation/2010-to-2021?amount=880, last viewed April 21, 2021). Co-Lead Counsel's rates fall well below.

Moreover, Co-Lead Counsel's work will not end with the Court's approval of the Settlement. Co-Lead Counsel will necessarily spend more time and resources assisting Settlement Class members with their Claim Forms, overseeing the claims process, and responding to Settlement Class members' inquiries. *Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 CIV. 4825 JLC, 2013 WL 1364147, at *7 (S.D.N.Y. Apr. 2, 2013) ("[T]hat Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request.").

Courts often also permit a relatively high multiplier to encourage early settlement. A too-strict focus on the lodestar "creates an incentive for attorneys to bill as many hours as possible, to do unnecessary work, and for these reasons also can create a disincentive to early settlement." *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG), 2010 WL 2653354, at *2 (E.D.N.Y. June 24, 2010). Early settlements of class actions preserve the courts' resources and allow quick distribution of settlements. Courts have found that counsel "should not be penalized for entering into early settlement" by slashing the percentage recovery of attorneys' fees. *Burns v. FalconStor Software, Inc.*, No. 10 CV 4572 (ERK), 2014 WL 12917621, at *9 (E.D.N.Y. Apr. 11, 2014). Indeed, "in the context of a complex class action, early settlement has far reaching benefits in the judicial system." *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 363–64, 373 (and awarding 4.65 multiplier in a case that settled after one year). *See also In re AT & T Corp.*, 455 F.3d 160, 173 (3d Cir. 2006) (multiplier of 2.99 was reasonable in a case that lasted four months even when "discovery was virtually nonexistent"); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 376

(S.D.N.Y. 2005) (awarding multiplier of 3.47 in light of an early settlement). The 1.47 multiplier Plaintiffs request is much lower than what courts have allowed in other cases where plaintiffs reach a good early settlement.

Thus, the time and effort Co-Lead Counsel has devoted to this case to obtain the $2.35 million recovery for the Settlement Class confirms that an award of $783,333 is reasonable.

## B.    A Quick-Pay Provision is Appropriate in This Case

The Court has previously-discussed the quick-pay provision in its opinion granting preliminary approval of settlement. *See Mikhlin, et al. v. Oasmia Pharmaceutical AB, et al.*, 19-CV-4349 (NGG) (RER), 2021 WL 1259559, at *7 (E.D.N.Y. Jan. 6, 2021). The quick pay provision provides for payment of attorneys' fees after final approval rather than after such final approval itself becomes final. The Court noted that the majority of cases that considered quick-pay provisions allowed them. *Id.* While the Court noted that one district court in the Second Circuit had disagreed, it found that "[w]hile it may not be appropriate in every instance for a court to approve payment of attorney's fees prior to the distribution of settlement funds among class members, the court finds that in this case the terms of the proposed award adequately protect the class's interests." *Id.*

While the Court has discretion to overrule the quick-pay provision, it should not do so. In *Hart v. BHH, LLC*, 334 F.R.D. 74, 79 (S.D.N.Y. 2020), which the Court cited, the parties devised a scheme that invited plaintiffs' counsel to abandon the class's interests in favor of their own. First, the parties reached a settlement which provided a defined payment for each settlement class member who put in a claim, rather than a total settlement fund, so that every penny not paid to claimants would revert to Defendants themselves. Second, the parties sought to set attorneys' fees by arbitration rather than through the court, encouraging plaintiffs' counsel to restrain efforts to reach settlement class members to secure concessions from the defendants because they could not

- 14 -

have their fees slashed by the court if settlement class members made few claims. And third, the quick-pay provision ensured that plaintiffs' counsel faced no countervailing incentive to actively seek out potential class members and push the settlement and payments to class members through. Showing that it was unusual circumstances that made the *Hart* quick-pay provision objectionable, in the only case that followed it, counsel would be paid their entire fee at approval but the defendants would make staggered payment. *Hernandez v. Between the Bread 55th Inc.*, No. 17-CV-9541 (LJL), 2020 WL 6157027, at *13 (S.D.N.Y. Oct. 21, 2020). Counsel would have no financial incentive to press defendants if they defaulted after counsel had been fully paid. *Id.* These cases confirm that quick-pay provisions are generally acceptable and only become objectionable if, combined with other unusual features of the settlement, they strip counsel of any incentive to ensure the Settlement Class is fully paid.

Here, Plaintiffs face no such incentives. No part of the fund will revert to Defendants, so the number of claims is not relevant to Defendants' payout. Further, if the Court deems the number of claims relevant, it can take it into account in setting fees. Thus, it is simply not necessary to delay payment until the Settlement Class has been paid. The Court can allow the quick-pay provision to serve its purpose of disincentivizing meritless extortionate objections.

**C.    The Court Should Permit Counsel to Recover Its Expenses**

In addition to Co-Lead Counsel's request for a fee of one-third of the net Settlement Fund, Co-Lead Counsel seeks reimbursement of $40,727.96 in litigation costs and expenses incurred in connection with the prosecution of this action. *See* Joint Decl. ¶ 20, Exs. 2 and 3. "Courts routinely grant the expense requests of class counsel." *Gilat*, 2007 WL 2743675, at *18 (quoting *KeySpan*, 2005 WL 3093399, at *18).

At $15,312.00, the largest single expense was a financial expert, who advised on damages and market efficiency. The financial expert prepared more than a dozen damages models and

- 15 -

investigated the unexpectedly critical issue of how many Oasmia ADSs there were. The financial expert also analyzed whether Oasmia ADSs traded on an efficient market, which would be necessary for class certification. Next in importance at $11,129 were fees paid to the mediator whose work was necessary to reach the Settlement. The remaining approximately $14,500 consists of the costs of transcription and translation services, travel, legal research, and miscellaneous other expenses.

The expenses incurred are reflected in Co-Lead Counsel's books and records, Joint Decl., Exs. 2-3 (Co-Lead Counsel's fee declarations), and were reasonable and necessary to achieve the Settlement. *See In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 364 (E.D.N.Y. 2010) (reimbursing "expert fees, electronic research charges, long distance telephone and facsimile charges, postage and delivery expenses, discovery costs, filing fees, photocopying, expenses associated with locating and interviewing dozens of witnesses, and out-of-town travel expenses").

**D.    The Proposed Award to Plaintiffs is Reasonable**

The PSLRA permits "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class." 15 U.S.C. § 78u-4(a)(4). Courts in the Second Circuit "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Gilat*, 2007 WL 2743675, at *19; *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 132–33 (2d Cir. 2014) (affirming the award of PSLRA expense and costs to lead plaintiffs totaling $453,000). "PSLRA awards are not limited to lost wages or other documented expenses … [and] may be awarded in recognition of, for example, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation." *MetLife*, 689 F. Supp. 2d at 370.

Lead Plaintiffs have devoted a substantial amount time to this case. Ms. Schoof and Messrs. Mikhlin and Oster spent time monitoring news on the Company, reviewing the initial and amended pleadings, and communicating and corresponding with Co-Lead Counsel regarding the litigation and settlement. Therefore, Lead Plaintiffs request a payment to reimburse them for the time they spent on this case in the amount of $6,000 each, or $18,000 in total. Such a payment is "reasonable and appropriate relative to the Settlement." *In re Giant Interactive Group, Inc. Securities Litigation*, 279 F.R.D. 151, 165-66 (S.D.N.Y. Nov. 2, 2011) (awarding three lead plaintiffs $10,000 each and the fourth $5,400); *Johnson v. US Auto Parts Network, Inc.*, 2008 WL 11343481, at *4-5 (C.D. Cal. Oct. 9, 2008) (awarding lead plaintiff $12,500).

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Co-Lead Counsel's application for an award of attorneys' fees, reimbursement of reasonable expenses, and an award to Plaintiffs for services rendered to the Settlement Class.

Dated:   April 21, 2020                    Respectfully submitted,

                                           **HAGENS BERMAN SOBOL SHAPIRO LLP**

                                           By: */s/ Reed R. Kathrein*

                                           Reed R. Kathrein (*pro hac vice*)
                                           Danielle Smith (*pro hac vice*)
                                           HAGENS BERMAN SOBOL SHAPIRO LLP
                                           715 Hearst Avenue, Suite 202
                                           Berkeley, CA 94710
                                           Telephone: (510) 725-3000
                                           Facsimile:  (510) 725-3001
                                           reed@hbsslaw.com
                                           danielles@hbsslaw.com

- 17 -

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Co-Lead Counsel*

**THE ROSEN LAW FIRM, P.A.**

By: */s/ Jonathan Horne*

Jonathan Horne
Phillip Kim
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile:  (212) 202-3827
Email: pkim@rosenlegal.com
Email: jhorne@rosenlegal.com

*Co-Lead Counsel*

- 18 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 21, 2021, a true and correct copy of the foregoing document

was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Jonathan Horne*

Jonathan Horne
