**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MARK MIKHLIN, Individually and on Behalf of All Others Similarly Situated, <br><br> *Plaintiff*, <br><br> v. <br><br> OASMIA PHARMACEUTICAL AB, JULIAN ALEKSOV, MIKAEL ASP, ANDERS LUNDIN, FREDRIK GYNNERSTEDT, and ANDERS BLOM, <br><br> *Defendants*. | Case No.: 1:19-cv-04349-NGG-RER |

**JOINT DECLARATION OF REED R. KATHREIN AND JONATHAN HORNE IN SUPPORT OF (1) LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT AND (2) CO-LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFFS**

Reed R. Kathrein and Jonathan Horne hereby declare:

1.      We are Co-Lead Counsel for Plaintiffs Jeffrey Oster, Rosalind Schoof, And Mark Mikhlin ("Lead Plaintiffs" or "Plaintiffs"), in the above-referenced Action. We have personal knowledge of the facts set out below and are competent to testify with respect thereto.

2.      We submit this Declaration in support of Lead Plaintiffs' motions for: (1) Final Approval of Proposed Class Action Settlement; and (2) Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Lead Plaintiffs ("Motions"). These motions are filed concurrently herewith.

3.      The purpose of this Declaration is to set forth to the Court facts which do not otherwise appear in documents filed in this case or other public sources. A complete description of the nature of the claims asserted and the procedural history of the Action, the reasons why the settlement, plan of allocation, and fee and expense requests should be approved are set out in the memoranda of law in support of the Motions.

4.      Through the Settlement, Defendants will pay $2,350,000 in cash in exchange for the release of all claims Lead Plaintiffs asserted against Oasmia Pharmaceutical AB ("Oasmia" or the "Company"), Julian Aleksov, Mikael Asp, Anders Lundin, Fredrik Gynnerstedt, Anders Blom, Bo Cederstrand, Alexander Kotsinas, Lars Bergkvist, Per Lango, Hans Liljeblad, Horst Domdey, and Ernst & Young AB (collectively, "Defendants" and with Plaintiffs, the "Settling Parties") and completely resolves this Action.

5.      The Settlement results from extensive arm's-length settlement negotiations among experienced counsel. Through a formal in-person mediation session, counsel for the Settling Parties vigorously debated the strengths and weaknesses of the claims and defenses in this Action.

- 1 -

Co-Lead Counsel's ability to reach a compromise in light of the many complex issues presented in this litigation evidences the quality of their representation.

## I.      RISKS AND COSTS OF LITIGATION

6.      When this case was filed, Counsel foresaw protracted investigation and litigation of a foreign company operating in a small country with a niche, foreign language. Finding a Swedish investigator skilled in the kind of investigation the Private Securities Litigation Reform Act of 1995 requires would prove difficult. Moreover, with a threatened criminal investigation, it was unlikely witnesses with knowledge would voluntarily involve themselves in civil litigation.

7.      To draft an amended complaint, Co-Lead Counsel scoured Swedish and U.S. public documents to construct a detailed timeline of developments in Oasmia's corporate history. Co-Lead Counsel identified instances in which Oasmia's stock price fell in response to Swedish or English language news. Co-Lead Counsel then formulated a theory of the case based on the liability facts Counsel discovered. Co-Lead Counsel sought to link as many of the declines to the fraud as the facts would allow. Co-Lead Counsel's ambitious theory thus maximized the proportion of Settlement Class Members' losses that would be treated as compensable damages.

8.      Were this case to continue, Plaintiffs would have to seek third-party discovery through the Hague Convention on the Taking of Evidence Abroad. When making a Hague request, the receiving country decides how much discovery to allow. Receiving countries invariably allow less discovery than is available through U.S. subpoenas. Further, while subpoenas can be served on notice to the opposing counsel, to obtain letters rogatory, Plaintiffs must file a motion in this Court, obtain a favorable ruling, and then file an enforcement proceeding in the receiving country. While delays vary by country, in Co-Lead Counsel's experience, they are considerable. Further, in Co-Lead Counsel's experience, the propounding party will likely pay the letters rogatory

target's attorney's fees. Thus, discovery through letters rogatory is burdensome, time-consuming, and expensive.

## II. MEDIATION

9. The Settling Parties held a full-day mediation before Jed Melnick, a respected mediator.

10. The mediation took place on March 6, 2020. Before this mediation, the Settling Parties exchanged detailed mediation statements, discussing all relevant stages of the litigation, and issues of contention, including issues related to experts.

## III. SETTLEMENT

11. The Settlement provides the Class with $2,350,000 in cash. With maximum damages estimated at $4.5 million, the Settlement returns approximately 52% of maximum possible damages.

12. Lead Plaintiffs secured confirmatory discovery as part of the Settlement. were permitted to terminate the Settlement if their confirmatory discovery showed that the Settlement was not fair, reasonable, adequate, and in the Settlement Class's best interest. Lead Plaintiffs' main objective was confirming Oasmia's representation that the number of ADSs in the market was lower than the number sold during the ADSs' initial public offering ("IPO"). After confirming Oasmia's representation and reviewing a number of other documents, Lead Plaintiffs declined to exercise their right to terminate the Settlement.

## IV. THE PLAN OF ALLOCATION SHOULD BE APPROVED AS IT IS FAIR AND REASONABLE

13. The objective of the Plan of Allocation is to equitably distribute the Net Settlement Fund among Authorized Claimants who suffered economic loss as a result of Defendants' alleged fraud as opposed to losses caused by market or industry factors not related to the alleged fraud.

14.     The Plan of Allocation was formulated by Co-Lead Counsel, in consultation with a well-respected and experienced financial consultant and was designed to ensure that the distribution of the settlement fund was fair, and consistent with Lead Plaintiffs' theory of the case, which asserted that there were declines in the price of Oasmia's stock reflecting disclosures of the truth relating to the alleged misconduct; and to ensure that the allocation comported with the federal securities laws, including principles of loss causation and negative causation.

15.     Lead Counsel and their financial consultant determined this was the fairest method of allocation of the Net Settlement Fund.

## V.     LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

16.     As set forth in the time reports in the Declaration of Reed R. Kathrein on Behalf of Hagens Berman Sobol Shapiro Concerning Attorneys' Fees and Expenses ("Kathrein Fee Dec.") and the Declaration of Jonathan Horne on Behalf of the Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Horne Decl."), true and correct copies of which are attached hereto as Exhibits 2 and 3, Hagens Berman Sobol Shapiro LLP has committed 555.5 and The Rosen Law Firm, P.A. has committed 253.76 hours to litigating this Action from the initial investigation to its resolution.

17.     To litigate this action, Co-Lead Counsel: (1) investigated the claims in this action to plead an initial complaint; (2) scoured English and Swedish-language public records and obtained documents from Swedish authorities; (3) translated key documents into English; (4) consulted with an accounting and auditing expert to plead violations of both accounting and auditing standards; (5) deliberated with a damages expert to identify corrective disclosure dates and damages scenarios; (6) drafted and filed a detailed 102-page Amended Complaint (*see* ECF No. 23); (7) drafted a mediation brief; (8) attended a full-day mediation; (9) ensured that the Settlement agreement contained key provisions obligating Defendants to produce to Plaintiffs a

limited number of documents that confirmed the Settlement's key assumptions; (10) drafted and negotiated the Stipulation and Agreement of Settlement and exhibits thereto, and filed them alongside Plaintiffs' motion for preliminary approval of the Settlement; and (11) supervised the program to provide notice to the Settlement Class.

18.    Based on the hours expended by Co-Lead Counsel and the current billing rates for Co-Lead Counsel's professionals, the total lodestar is $531,950.50.

19.    The following table provides a summary of the lodestar analysis:

| Firm | Hours | Lodestar |
|---|---|---|
| Hagens Berman Sobol Shapiro LLP | 555.5 | $336,247.50 |
| The Rosen Law Firm, P.A. | 253.76 | $195,703.00 |
| *Total* | *809.26* | *$531,950.50* |
| Requested Fee | $783,333 | |
| Multiplier | 1.47 | |

20.    The following table provides a summary of Co-Lead Counsel's unreimbursed expenses:

| Category of Expenses | Amount |
|---|---|
| Court Fees/Filing Fees | $700.00 |
| Copying/Printing | $2.00 |
| Experts | $15,312.00 |
| Mediation Fees | $11,129.00 |
| Legal Research/ECF/PACER | $2,714.67 |
| Overnight/Hand Delivery | $17.28 |
| Service of Process | $45.00 |
| Telephone/Fax | $13.93 |
| Transcripts/Court Reporters/Translations | $4,642.29 |
| Travel/Transportation/Hotels/Meals | $2,340.93 |
| Miscellaneous (Press Releases and Notice to Class Members) | $3,810.86 |
| **TOTAL EXPENSES:** | **$40,727.96** |

## VI.   EXHIBITS

21.   Attached to this Declaration are true and correct copies of the following

documents:

Exhibit 1:   Declaration of Josephine Bravata Concerning (I) the Mailing of the Notice of Pendency and Proposed Settlement of Class Action and Proof of Claim and Release Form, (II) the Publication of the Summary Notice of Pendency and Proposed Class Action Settlement, (III) the Exclusion Requests Received, and (IV) the Objections Submitted, and Exhibits A-D thereto

Exhibit 2:   Declaration of Jonathan Horne on Behalf of the Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses

Exhibit 3:   Declaration of Reed R. Kathrein on Behalf of the Hagens Berman Sobol Shapiro LLP Concerning Attorneys' Fees and Expenses

Exhibit 4:   Hagens Berman Sobol Shapiro LLP Firm Resume

Exhibit 5:   The Rosen Law Firm, P.A. Firm Resume

We declare under penalty of perjury that the foregoing is true and correct.

Executed on April 21, 2021

/s/ Reed R. Kathrein
Reed R. Kathrein

Executed on April 21, 2021

/s/ Jonathan Horne
Jonathan Horne

- 6 -